**PROFESSIONAL INVESTORS LIFE INSURANCE COMPANY, INC., An Oklahoma corporation, Plaintiff,**

v.

**Louis J. ROUSSEL, et al., Defendants.**

**No. 76–0178–C5.**

United States District Court,
D. Kansas.

Dec. 4, 1981.

John C. Frieden and Donald R. Paxson, Topeka, Kan., for plaintiff.

Robert Schartz, Wichita, Kan., for Perkins.

Walter C. Williamson, Wichita, Kan., for Mick, Stack Assoc., Mick, Smith and Adrian.

Bob W. Storey, Topeka, Kan., for Brandon, Pope and Salloum.

Michael F. Little, Baldwin & Haspel, New Orleans, La., Herbert A. Marshall, Marshall, Hawks, McKinney & Hendrix, Topeka, Kan., for Frank R. Leu.

Clifton S. Carl, Louie J. Roussel, III, Carl, Roussel & Hughes, New Orleans, La., Glenn D. Cogswell, Topeka, Kan., for Cauble, Azar and Salloum.

Ross D. Alexander, Wichita, Kan., for Kenneth Mick.

Glenn DeValerio, Kohn, Milstein & Cohen, Washington, D. C., Robert Ochs, Fisher, Ochs & Heck, P. A., Topeka, Kan., for National American.

Francois D. V. de La Barre, pro se.

Floyd J. Falcon, Jr., Baton Rouge, La., for F. D. V. de La Barre.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a diversity action brought by plaintiff Professional Investors Life Insurance Co., Inc. for actual and punitive damages against a group of defendants who

allegedly conspired to commit tortious acts in the takeover of a Kansas Insurance Holding Company, Farm and Ranch Financial Inc. ("Farm & Ranch"). Plaintiff had a contract with a limited partnership, First Greystone & Associates ("First Greystone"), to purchase a block of 290,000 shares of Farm & Ranch stock. Plaintiff claims that defendants' conspiratorial acts induced the breach of the contract and prevented plaintiff from gaining control of Farm & Ranch. A more detailed summary of the background of this case may be found at 445 F.Supp. 687 (D.Kan.1978).

Plaintiff's theory in this case, briefly capsulized, is that defendant Louis Roussel orchestrated the surreptitious purchase of 300,000 to 400,000 shares of Farm & Ranch stock by his friends, business associates and Roussel-controlled corporations for the purpose of placing financial pressure upon First Greystone so that First Greystone would breach its contract with plaintiff and sell its 290,000 shares to American Benefit Life Insurance Company, a Roussel-controlled company. These purchases, according to plaintiff, were made in violation of the Kansas Insurance Holding Company Act which requires persons or related entities who wish to purchase more than ten percent of a Kansas insurance company's stock, to file a Form A application with the Commissioner of Insurance. Plaintiff claims that defendants' conspiracy was effective because plaintiff had the option of backing out of its agreement to purchase the block of Farm & Ranch stock from First Greystone if plaintiff's Form A application was not approved by the Insurance Commissioner by July 1, 1975. Once it became clear that plaintiff's Form A filing would not be approved by July 1, 1975 First Greystone allegedly feared that its block of stock would plummet in value. This is because defendants' stock purchases outnumbered 290,000 shares. Thus, First Greystone's block of stock no longer represented effective control of Farm & Ranch. Fearing that plaintiff would not be interested in buying a minority interest in Farm & Ranch and, consequently, would use its option to back out of the stock purchase after July 1, 1975, and further fearing no other buyer could be found at the price of $5.20 per share, First Greystone breached its contract with plaintiff in June and sold the block of stock to American Benefit Life Insurance Company ("American Benefit"). Thus, plaintiff was deprived of its contractual right to buy the First Greystone block of Farm & Ranch stock as well as its opportunity to use that block of stock as a springboard for the takeover of Farm & Ranch.

The complaint contains three counts charging defendants with fraud, inducing a breach of contract, and interference with a prospective business advantage. Several defendants have now moved for summary judgment against all counts.[1] Many issues are raised by the summary judgment motions. Among them are: 1) whether defendants had knowledge of plaintiff's contract with First Greystone or of plaintiff's quest to take over Farm & Ranch; 2) whether plaintiff's release of First Greystone also operated to release defendants from liability; 3) whether the Kansas Insurance Holding Company Act, K.S.A. § 40–3301 et seq. is constitutional; and 4) whether First Greystone merely offered to sell defendants the previously contracted block of stock without any tortious inducement by defendants. Since several defendants raise these issues among others in their summary judgment motions, the issues will be considered according to their application to the three counts of the complaint. Issues raised individually and not duplicated in other defendants' summary judgment motions shall be considered separately after an examination of the three counts of the complaint.

---

1. The defendants bringing summary judgment motions are: Leon Salloum, Robert Azar, Rex Cauble, Louis Roussel, Empire Land Corporation, Superfine Oil & Gas Corp., Francois D. V. de La Barre, and Michael Shada. Fletcher Bell, the Kansas State Insurance Commissioner has been permitted to intervene for the purpose of addressing the constitutionality of the Kansas Insurance Holding Company Act.

Before looking at plaintiff's three causes of action in light of defendants' summary judgment arguments, it might be helpful to review the general standards governing the application of Fed.R.Civ.P. 56 to this case.

The Tenth Circuit recently reviewed these standards in *Barber v. General Electric Co.*, 648 F.2d 1272 (10th Cir. 1981):

> [F]or summary judgment to lie, " '[t]he movant must demonstrate entitlement [to a summary judgment] beyond a reasonable doubt and if an inference can be deduced from the facts whereby the nonmovant might recover, summary judgment is inappropriate.' " *Williams v. Borden, Inc.*, 637 F.2d 731, 738 (10th Cir. 1980), quoting from *Mustang Fuel Corp. v. Youngstown Sheet and Tube Co.*, 516 F.2d 33, 36 (10th Cir. 1976); *Webb v. Allstate Ins. Co.*, 536 F.2d 336, 340 (10th Cir. 1976). The court must construe the evidence, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion for summary judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bruce v. Martin Marietta Corp.*, 544 F.2d 442 (10th Cir. 1976). Summary judgment is not to be granted unless the evidence is clear to the point that there is no genuine factual issue upon which reasonable minds might differ. *Williams v. Borden, supra*. . . . The courts recognize that summary judgment is a drastic remedy which is to be granted with caution so as to insure that litigants will have a trial on bona fide factual disputes. *Machinery Center, Inc. v. Anchor National Life Ins. Co.*, 434 F.2d 1 (10th Cir. 1970).

*Id.* at 1276 n. 1.

■ It is also worthwhile to note that summary judgment is not favored as a substitute for trial in conspiracy cases. The Tenth Circuit commented in *Fisher v. Shamburg*, 624 F.2d 156, 162 (1980):

> Direct evidence of a conspiracy is rarely available, and the existence of a conspiracy must usually be inferred from the circumstances. *Loew's, Inc. v. Cinema Amusements*, 210 F.2d 86, 93 (10th Cir.

1954). As Justice Black stated in *Adickes v. Kress & Co.*, 398 U.S. [144] at 176, 90 S.Ct. [1598] at 1618 [26 L.Ed.2d 142] (concurring opinion):

> The existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide. In this case petitioner may have had to prove her case by impeaching the store's witnesses and appealing to the jury to disbelieve all that they said was true in the affidavits. The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases. The advantages of trial before a live jury with live witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of summary judgment.

These sentiments have been applied to cases involving conspiracies to violate state and federal securities laws (*Ferguson v. Omnimedia, Inc.*, 469 F.2d 194, 198 (1st Cir. 1972)), conspiracies to commit fraud (*Seaboard Surety Co. v. Permacrete Const. Corp.*, 105 F.Supp. 349, 350 (E.D.Pa.1952)), and claims of inducement to breach a contract (*Savarin Corp. v. National Bank of Pakistan*, 290 F.Supp. 285 (S.D.N.Y.1968)).

■ Finally, courts are reluctant to grant summary judgment in cases involving complex factual and legal issues, even when basic facts are settled. In *Wessinger v. Southern Ry. Co., Inc.*, 438 F.Supp. 1256, 1259 (D.S.C.1977), the court stated:

> Nor is summary judgment appropriate where inquiry into the facts is desirable to clarify the application of the law. *Kirkpatrick v. Consolidated Underwriters*, 227 F.2d 228 (4th Cir. 1955). Even though there may be no controversy over the basic facts, summary judgment should not be granted if the parties disagree as to the inferences which may properly be drawn. *American Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965).

See also, *Eby v. Reb Realty, Inc.*, 495 F.2d 646, 649 (9th Cir. 1974); *Security Benefit Life Ins. Co. v. United States of America*, No. 77–4201 (D.Kan., unpublished, 4/8/80); *Elliott v. Elliott*, 49 F.R.D. 283, 284 (S.D.N.Y.1970); *Petition of Bloomfield Steamship Co.*, 298 F.Supp. 1239, 1242 (S.D.N.Y.1969), aff'd 422 F.2d 728 (2d Cir. 1970); *New York Stock Exchange, Inc. v. Sloan*, 394 F.Supp. 1303, 1306 (S.D.N.Y.1975); *Savarin Corporation v. National Bank of Pakistan, supra*, 290 F.Supp. at 289; *Cassady v. Duke Power Co.*, 30 F.R.D. 121, 122 (D.S.C.1962).

■ Of course, summary judgment is not precluded in a factually complex case involving conspiracy claims. See, *e.g., Staffin v. Greenberg*, 509 F.Supp. 825 (E.D.Pa. 1981). Much caution is warranted, however, before granting such a "drastic remedy."

## FRAUD

■ In Kansas, the necessary elements of fraud have been listed as:

(1) that the representation was made as a statement of a material fact; (2) that the statement was known to be untrue by the party making it, or was made with reckless disregard for the truth; (3) that the party alleging fraud was justified in relying upon the statement; (4) that the party alleging fraud actually did rely upon the statement; and finally, (5) that as a result of this reliance, the party alleging fraud was damaged. *Goff v. American Savings Association*, [1 Kan.App.2d 75, 78, 561 P.2d 897 (1977)].

*Miles v. Love*, 1 Kan.App.2d 630, 573 P.2d 622, 624 (1977). Kansas courts have also recognized an action based on fraud when material facts have been fraudulently concealed from a buyer by a vendor. *Jenkins v. McCormick*, 184 Kan. 842, 339 P.2d 8 (1959); *Griffith v. Byers Construction Co.*, 212 Kan. 65, 70, 510 P.2d 198 (1973); *Miles v. Love, supra.*

In the instant case, plaintiff alleges it was damaged by its reliance upon defendants' fraudulent misrepresentations and defendants' fraudulent concealment of material information in filings before the Kansas Commissioner of Insurance and the Securities and Exchange Commission. Defendants respond by arguing that any fraud action based upon the failure to comply with the Kansas Insurance Holding Company Act, K.S.A. § 40–3301 *et seq.*, and the Securities Exchange Act of 1934 as amended by the Williams Act of 1968, 15 U.S.C. § 78n(e) is barred by the exclusion of tender offerors from the protected class of each statute. The exclusion of plaintiff from the protection of these statutes is substantiated by an examination of K.S.A. § 40–3301 and *Piper v. Chris-Craft Industries*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977).

We disagree with defendants' contention because we do not believe that plaintiff's exclusion from the class of persons protected by statutes allegedly violated by defendants' misrepresentations, limits the liability of defendants for the misrepresentations if the misrepresentations were calculated to influence plaintiff's conduct. This holding does not conflict with Restatement (Second) of Torts § 536 (1977) in spite of defendants' reliance upon that authority. Section 536 of the Restatement provides:

If a statute requires information to be furnished, filed, recorded or published for the protection of a particular class of persons, one who makes a fraudulent misrepresentation in so doing is subject to liability to the persons for pecuniary loss suffered through their justifiable reliance upon the misrepresentation in a transaction of the kind in which the statute is intended to protect them.

This section does not limit liability for misrepresentations made to persons whom the maker of the misrepresentations intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentations. This is made clear by Comment C to § 536:

This Section is a special application, and *not a limitation* of the rule stated in § 531. The rule may be expressed by saying that when a statute requires information to be furnished, filed, recorded or published for the protection of a particular class of persons in particular kinds of

transactions, one who complies with the requirement always has reason to expect that the information will reach the class of persons and influence their conduct. This Section does not limit or restrict liability under the rule stated in § 531, apart from the statute.[2] (emphasis added).

This point is illustrated by the holding in *Hindman v. First National Bank*, 112 F. 931 (6th Cir. 1902) *cert. denied*, 186 U.S. 483, 22 S.Ct. 943, 46 L.Ed. 1261 (1902). There, the plaintiff relied upon a certificate the defendant bank filed with the Kentucky insurance commissioner. The certificate stated the deposits held by an insurance company, and was necessary for the insurance company to be licensed to do business in Kentucky. The plaintiff relied upon the certificate in making a decision to buy stock in the insurance company. The plaintiff sued the bank on the basis of false statements made in the certificate after the stock purchase proved to be "a most ruinous investment."

The circuit court determined that the case should go to a jury instructed to determine if the bank representation was made to influence the plaintiff.

> The true inquiry is, who did the bank design to influence by its false representation? If the representation here involved was not only made to induce favorable action by the state insurance commissioner, but was also intended for the information of all who should be disposed to deal in the company's shares, and who should inspect it for information in respect of the company's capital, it should be regarded as addressed to every such person.

*Id.* at 943.

Similarly, in the case at bar, we believe a jury should decide if the representations made by defendants were made for purpose of influencing plaintiff's conduct. The evidence of such intent in this case may not be as strong as that present in *Hindman, supra*, where the plaintiff was referred to the certificate as evidence of the insurance company's financial strength. Nevertheless, we believe there is sufficient evidence in the record from which defendants' intention to influence plaintiff may be inferred, to preclude a finding of summary judgment on behalf of defendants.

Defendants also argue that summary judgment should be granted against plaintiff's fraud claim because no buyer-seller or fiduciary relationship existed between plaintiff and defendants. We do not believe that plaintiff must prove the existence of such a relationship in order to recover. *Citizens State Bank v. Gilmore*, 226 Kan. 662, 669, 603 P.2d 605 (1979).

Finally, defendants argue that plaintiff did not rely upon the alleged concealment of information and misrepresentations because plaintiff had independent knowledge that the "Roussel group" was making stock purchases. Defendants, however, do not contend that the value of this knowledge was equivalent to the information plaintiff would have had if defendants had not made their alleged misrepresentations. Frankly, the extent plaintiff's reliance upon defendants' filings with the Commissioner of Insurance for Kansas and the Securities Exchange Commission is an issue of fact which should be determined by a jury.

INDUCING BREACH OF CONTRACT

The elements of the tort of inducing breach of contract may be summarized as follows: 1) the existence of a contract between plaintiff and a third party; 2) actual or constructive knowledge of the contract by defendants; 3) intentional acts by defendants inducing a third party to breach the contract with plaintiff; 4) such acts constituting the proximate cause of the

---

**2.** Section 531 of the Restatement (Second) of Torts reads:

> One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.

breach; and 5) damage suffered by plaintiff as a direct result of defendants' actions. American Bar Association, Model Jury Instructions for Business Tort Litigation § 1.03 (1980). Defendants Rex Cauble, Robert Azar, and Leon Salloum have argued that summary judgment should be granted in their favor because they had no knowledge of the contract between plaintiff and First Greystone and, consequently, did not intend to induce the breach of the contract. All three defendants have signed affidavits supporting this contention. Counsel for plaintiff has admitted that no direct evidence of these defendants' knowledge of the contract has been produced. Still, plaintiff contends that these defendants' knowledge of the contract and intention to induce the breach of the contract may be inferred from other evidence. This evidence includes the defendants' business and social relationships with Louis Roussel, the information pertaining to Farm & Ranch stock received by defendants from Louis Roussel, defendants' purchase of Farm & Ranch stock with the assistance of agents or corporations controlled by Louis Roussel, and defendants' sale of the Farm & Ranch stock to Louis Roussel or entities related to Roussel.

The argument of defendants Cauble, Salloum, and Azar is similar to an argument discussed in *Seaboard Surety Co. v. Permacrete Const. Corp.*, 105 F.Supp. 349 (E.D.Pa. 1952). There, the plaintiff surety sued several defendants for conspiring to transmit erroneous financial information relating to a construction company which plaintiff bonded. The summary judgment contention of one defendant named Smith was described as follows:

In support of this motion for summary judgment, Smith ... has filed an affidavit not denying that he delivered the documents in question but stating that he acted in the transaction as an innocent agent for Permacrete [the construction company], and asserting that he had no knowledge or information at the time which would lead him to believe that the documents did not correctly reflect Permacrete's financial position and that he made no representations of any kind.

The court denied the motion for summary judgment on the following grounds:

[Smith's knowledge] that a sum of $160,-000 which Permacrete had in the bank was borrowed money and was not capital or surplus ... is certainly a material issue of fact and I do not see how the defendant can remove it from the case by filing an affidavit which is, actually, no more than an amplification of the denials contained in his answer, with emphasis. There may be cases in which, on a motion for summary judgment, the answering party is required to come forward with counter affidavits or other proof, as where the moving party by affidavit, raises a new issue outside the scope of the complaint—a release, for example—... but this is not one of them.

*Id.* at 350. The court also noted evidence in the form of a counteraffidavit indicated the existence of a genuine issue of material fact relating to Smith's knowledge of Permacrete's financial condition.

We believe a similar approach must be applied in this case. The value of defendants' affidavits must be discounted by the reality that conspiracies, human knowledge, and human intention are seldom provable with direct evidence. In the case at bar, there is sufficient evidence from which defendants' knowledge of plaintiff's contract with First Greystone can be inferred, to allow a jury to determine the truth of the statements defendants made in their affidavits.

All defendants contend that they are not liable for inducing the breach of plaintiff's contract with First Greystone because they did not buy stock from First Greystone after the breach. Defendants' direct benefit from the breach of the contract, however, is not an element of the tort. Since plaintiff need not prove that defendants bought First Greystone's stock in Farm & Ranch, defendants' failure to make such a purchase does not require the entry of summary judgment.

In addition, defendants contend that they did not induce First Greystone to breach

the contract with plaintiff. Instead, according to defendants, First Greystone voluntarily approached defendant Roussel with the offer to sell the block of Farm & Ranch stock. Assuming the defendants are correct in stating that representatives of First Greystone approached Louis Roussel to sell their stock (and there *is* evidence in the record to support this contention), the key question becomes whether First Greystone was forced to take this action because of financial pressures created by defendants' conduct. Economic pressure has been recognized as a means to induce a breach of contract. Restatement (Second) of Torts § 767 Comment C (1977).

Defendants contend that the financial pressure faced by First Greystone was not of defendants' making and that First Greystone could have enforced its contract with plaintiff to sell its Farm & Ranch stock for $5.20 per share. There is no doubt that First Greystone faced economic problems that were not caused by defendants' actions. It is also true that First Greystone could have enforced its contract to sell Farm & Ranch stock to plaintiff, regardless of the defendants' stock purchases, if plaintiff's Form A application was approved by the Commissioner of Insurance by July 1, 1975. But, plaintiff contends that when it became clear that the Commissioner's approval would not happen before July 1, 1975, First Greystone feared that it could not enforce its contract with plaintiff and that defendants' stock purchases would require it sell its block of Farm & Ranch stock for a lower price. Therefore, plaintiff alleges, First Greystone was induced to break its contract with plaintiff and sell the stock to American Benefit, a Roussel-controlled company. The alleged means of inducement was economic pressure through the unlawful and unethical acquisition of Farm & Ranch stock. A review of the record does not persuade this court beyond doubt of the inaccuracy or untruthfulness of plaintiff's scenario. Therefore, we refuse to grant summary judgment on the grounds that First Greystone voluntarily breached its contract with plaintiff.

## INTERFERENCE WITH A PROSPECTIVE BUSINESS ADVANTAGE

The tort of interference with a prospective business advantage is a developing concept with elements similar to the tort of inducing breach of contract. The elements have been summarized as follows: 1) the existence of a business relationship or expectancy with the probability of future economic benefit for the plaintiff; 2) knowledge of the relationship or expectancy by defendants; 3) that, except for the conduct of the defendants, plaintiff was reasonably certain to have continued in the relationship or realized the expectancy; 4) intentional misconduct by defendants; and 5) damage suffered by plaintiff as a direct or proximate result of defendants' misconduct. American Bar Association, Model Jury Instructions for Business Tort Litigation § 2.02 [2] (1980).

Defendants raise one issue against this part of the complaint which is not raised against plaintiff's claim for inducing breach of contract. This issue is whether plaintiff can claim an expectancy of stock purchases beyond the purchase contracted for with First Greystone. Plaintiff alleges that defendants prevented plaintiff from gaining control of Farm & Ranch. Alexander Stone, the President of Professional Investors Life Insurance Co., has testified that plaintiff intended to purchase 51% of the Farm & Ranch stock. (Stone deposition, p. 239). It is admitted however, that plaintiff made no further stock purchases after it contracted to buy 32% of the Farm & Ranch stock from First Greystone. Plaintiff alleges that it did not make further purchases because it thought such purchases would be illegal. There is no other evidence of plaintiff's development of a business relationship with stockholders in Farm & Ranch aside from First Greystone.

We believe this record cannot support even a reasonable doubt that plaintiff had a sufficient expectation of future stock purchases to support a claim of a prospective business advantage. While we recognize that interference with a prospective business advantage is a developing field, we

find no support in case law or logic for liability against defendants when plaintiff's failure to purchase or negotiate the purchase of additional Farm & Ranch stock was the result of plaintiff's independent judgment not to pursue additional stock purchases. See *King v. City of Seattle*, 84 Wash.2d 239, 525 P.2d 228, 235 (1974). We believe plaintiff was mistaken if plaintiff thought it was illegal to contract for additional shares of Farm & Ranch stock. We see no barrier to amending plaintiff's Form A application to accommodate an additional stock purchase. Nor was plaintiff barred from making additional purchases contingent on Form A approval. Cf., *Sun Life Group, Inc. v. Standard Life Ins. Co.*, No. IP 80–245C (S.D.Ind.1980) (interpreting a similar Indiana law to permit the conditioning of stock purchases on Form A approval). Even if such a bar did exist, we do not believe that plaintiff's claim of interference with a prospective business advantage would be significantly improved. A bar against additional purchases would not prevent the establishment of a business relationship with other stockholders. Moreover, if plaintiff was prevented by the law from making additional purchases, assessing liability against defendants might be even more difficult, since it would be the law, not defendants' misconduct, which interfered with plaintiff's attempt to gain further control of Farm & Ranch.

In sum, because the discovery record forecloses the possibility that plaintiff could prove the existence of a business relationship with other stockholders from which plaintiff had a reasonable expectation of future benefit, we shall grant defendants' motions for summary judgment against plaintiff's claim of interference with a prospective business advantage.

■ We shall now discuss two arguments defendants have applied to each count of the complaint, namely, 1) that the Kansas Insurance Holding Company Act, K.S.A. § 40–3301 et seq. is unconstitutional; and 2) that defendants have been released from tort liability.

## THE CONSTITUTIONALITY OF THE KANSAS INSURANCE HOLDING COMPANY ACT

Defendants claim that the Kansas Insurance Holding Company Act ("KIHCA") is unconstitutional because it violates the Commerce Clause and the Supremacy Clause of the Constitution. Defendants' argument is hinged on the contention that the KIHCA is not protected from a Commerce Clause attack and preemption by federal securities legislation by the McCarran-Ferguson Act, 15 U.S.C. § 1012. The McCarran-Ferguson Act permits states to regulate the "business of insurance" and removes all Commerce Clause limitations upon this authority. *Western & Southern Life Ins. Co. v. State Board of Equalization,* 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). The McCarran-Ferguson Act also bars conflicting federal regulation of the "business of insurance." See *Securities and Exchange Commission v. National Securities, Inc.,* 393 U.S. 452, 457, 89 S.Ct. 564, 567, 21 L.Ed.2d 668 (1969). Defendant claims that regulations affecting the relationship of insurance companies with their stockholders are not laws regulating the business of insurance for the purposes of McCarran-Ferguson. Since the KIHCA regulations have such an effect, defendants argue that the McCarran-Ferguson Act does not protect KIHCA from their constitutional challenge.

Plaintiff has made several arguments in response to the defendants' constitutional attack upon the KIHCA. We shall use this opinion to note our agreement with two of those arguments. First, we agree with plaintiff that defendants, as conspirators alleged to have performed fraudulent acts in connection with the requirements of the KIHCA, may not argue that their fraud is absolved by the unconstitutionality of KIHCA.

Plaintiff relies upon *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) for this argument. In *Dennis*, the defendants were charged with a criminal conspiracy in violation of 18 U.S.C. § 371. This statute creates an offense for the conspiracy of two or more persons to

defraud the United States or an agency thereof. The defendants in *Dennis* were charged with fraudulently obtaining the services of the National Labor Relations Board by filing affidavits pursuant to § 9(h) of the Taft-Hartley Act. The affidavits falsely stated that defendants were not members of the Communist Party.

The Court refused to hear defendants' constitutional argument because defendants did not openly and directly challenge the statute.

> The governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional. This is a prosecution directed at petitioners' fraud. It is not an action to enforce the statute claimed to be unconstitutional.
>
> . . . .
>
> [I]n circumstances like those before us, [a statute] may not be circumvented by a course of fraud and falsehood, with the constitutional attack being held for use only if the conspirators are discovered.

*Id.* at 867, 86 S.Ct. at 1847–1848.

Very similar circumstances are alleged in the instant case. Defendants are alleged to have concealed information in violation of the KIHCA and to have made misrepresentations in violation of the KIHCA. It is also alleged that defendants' misconduct was committed with the intention of misleading plaintiff. Instead of making a direct attack upon the filing requirements of KIHCA, before appearing to comply with the statute, defendants have waited until they are charged with fraud to claim that the KIHCA is unconstitutional.

The fraudulent, improper and unethical conduct charged in this case centers upon defendants' purported compliance with the KIHCA. The alleged unconstitutionality of the statute does not negate the wrongfulness of purporting to comply with the statute for the purpose of defrauding plaintiff or evading the statute with the intention of inducing a breach of contract.

Defendants contend that *Dennis* is distinguishable from the instant case because it involved a criminal conspiracy charge. Criminal conspiracy, unlike civil conspiracy, does not require damage. The constitutionality of the KIHCA, however, does not affect plaintiff's damages. Neither does it alter the "actionable conduct" required under Kansas law for liability for civil conspiracy. See *Ammon v. Kaplow*, 468 F.Supp. 1304, 1312 (D.Kan.1979). If defendants' alleged misrepresentations and alleged concealment of material information were intended to influence plaintiff, defendants' conduct was actionable regardless of the constitutionality of the KIHCA. If defendants' interference with plaintiff's contract was lawful because of the asserted constitutionality of the KIHCA, but also unethical and committed in bad faith, defendants' conduct is still actionable. Lawful but unjustified and unprivileged conduct may be actionable as interference with contractual relations. See Restatement (Second) of Torts § 767 Comment C (1977) ("Under some circumstances the interference is improper even though innocent means are employed.")

In sum, we do not recognize the distinction raised by defendants. Under the rationale of *Dennis*, defendants' constitutional challenge should not be heard.

Plaintiff also argues that if defendants' constitutionality argument is considered, the argument is meritless. We agree with plaintiff for the following briefly described reasons.

As noted earlier, the key to defendants' argument is the application of the McCarran-Ferguson Act to the KIHCA. McCarran-Ferguson has application as long as the KIHCA governs the "business of insurance." Thus, the critical issue is whether the KIHCA regulates the "business of insurance" as that term has been construed by the courts.

*Securities and Exchange Commission v. National Securities, Inc.*, 393 U.S. 452, 453,

89 S.Ct. 564, 566, 21 L.Ed.2d 668 (1969) is an important case to this issue. There, the Supreme Court considered objections to the SEC's efforts to block a merger approved by the Arizona Insurance Commissioner pursuant to a state statute granting the commissioner the power of approval for the twin purposes of protecting insurance company shareholders and policyholders. The Court was faced with the question of whether federal regulations affecting the securityholders of insurance companies were barred by the McCarran-Ferguson Act's prohibition upon federal impairment of state regulation of the business of insurance. The Court held that the federal regulations could be enforced because the state regulations in question, either (1) governed the relationship of the insurance company and securityholders and not the "business of insurance" protected from federal impairment by McCarran-Ferguson (*Id.* at 460, 89 S.Ct. at 568); or (2) governed the relationship of the insurance company and policyholders and thus the "business of insurance," but were not significantly impaired by the federal regulations (*Id.* at 462–63, 89 S.Ct. at 569–570).

■ Similar analysis may be applied to this case. The KIHCA mandates that the Kansas Insurance Commissioner should consider Form A filings when 10% of a Kansas insurance company's stock is purchased, to determine if the interests of the insurance company's securityholders and policyholders are impaired. K.S.A. § 40–3304(d). To the extent the law operates to protect securityholders, it does not receive McCarran-Ferguson protection. Nevertheless, the KIHCA is safe from constitutional attack relative to the Supremacy and Commerce Clauses as long as the KIHCA does not significantly impede the purpose of federal securities regulation and does not place an excessive burden upon interstate commerce. *Sharon Steel Corp. v. Whaland*, 433 A.2d 1250 (N.H.1981) (Exhibit No. 2 attached to Memorandum of Intervenor Fletcher Bell). Remaining mindful that federal and state securities regulation should be construed to be consistent (*Merrill Lynch, Pierce, Fenner & Smith v. Ware*, 414 U.S. 117, 127, 94 S.Ct.

383, 389–390, 38 L.Ed.2d 348 (1973)), we fail to find that defendant has proven the KIHCA deficient in these regards.

■ More significantly, the KIHCA regulations merit McCarran-Ferguson protection because they protect the security of the policyholders with Kansas insurance companies. This fact is essentially undenied by defendants. Defendants argue that the regulations are excessive and that the policyholders may be protected with less stringent measures. This argument, however, ignores the intention of the McCarran-Ferguson Act to "broadly . . . give support to the existing and future state systems for regulating and taxing the business of insurance." *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 429, 66 S.Ct. 1142, 1154–1155, 90 L.Ed. 1342 (1946).

■ We believe that state authority in the area of insurance regulation should enjoy a presumption of validity. We refuse to adopt the position of requiring the least intrusive means of protecting insurance company-policyholder relations or the means most consistent with federal securities regulation. Complete harmony between federal securities regulation and state insurance regulation is clearly not required. Cf., *Securities and Exchange Commission v. National Securities, Inc., supra* (court remands the case for the trial court to consider the SEC's request to unwind a merger approved by the State insurance commissioner).

We recognize that *MITE Corporation v. Dixon*, 633 F.2d 486 (7th Cir. 1980); *Great Western United Corp. v. Kidwell*, 577 F.2d 1256 (5th Cir. 1978), and *Empire, Inc. v. Ashcroft*, 524 F.Supp. 898 (W.D.Mo.1981) provide some support for defendants' position. These cases, however, are distinguishable on the grounds that they consider the constitutionality of *general* takeover statutes. Such statutes must have a greater impact upon commerce and be a greater impediment to federal securities regulation than a law concentrating on insurance company transactions. In addition, the statutes are not protected by McCarran-Ferguson.

We also acknowledge defendants' reliance upon *National City Lines, Inc. v. LLC Corporation*, 524 F.Supp. 906 (W.D.Mo.1981)—a case (currently on appeal to the Eighth Circuit) where the trial court found a probability that portions of the Missouri Insurance Holding Companies Act are unconstitutional. We respectfully disagree with the analysis of the Missouri court for the above-stated reasons.

In sum, we hold that defendants' constitutionality argument should not be heard; but even if it is, the argument is meritless.

## PLAINTIFF'S RELEASE OF FIRST GREYSTONE

In return for $100,000, plaintiff signed a release statement which read as follows in pertinent part:

WHEREAS, this Agreement is intended to operate as a complete release of all obligations arising from oral or written contracts entered into by and between Professional, Greystone and Coen.

NOW, THEREFORE, in consideration of the agreements contained herein, the parties hereto agree as follows:

. . . .

3. Professional hereby agrees to release Greystone and its partners from any obligations or contracts entered into as a result of Farm and Ranch Financial, Inc.

■ Since this release was signed and executed in Oklahoma, defendants argue that Oklahoma law governs the interpretation of the release. According to defendants, Oklahoma law holds that a release of one joint tortfeasor is presumed to be a release of all other tortfeasors. Defendants argue that the release extends to tort liability because the third paragraph mentions "obligations *or* contracts." In addition, defendants note that Clark Brandon, the President of Farm & Ranch and an officer of First Greystone was once a defendant in this action. On the basis of these points, defendants claim that the release of Clark Brandon as an officer of First Greystone operated to release all defendants from tort liability.

Assuming that the predicate to defendants' claim is correct, we still do not believe summary judgment may be granted. The breaching party to a contract may not be sued for the tort of inducing a breach of contract. 45 Am.Jur.2d *Interference* § 26 (1969). A plaintiff's recourse against the breaching party is limited to a contract action. Thus, Clark Brandon's actions as an officer of First Greystone do not place him in the role of a joint tortfeasor. Instead, if not for the release, Brandon might be liable in a breach of contract claim.

■ Even if Brandon could be considered a released tortfeasor, there is enough evidence in the record regarding plaintiff's refusal to release Roussel, to place in doubt the presumption that the release was intended to protect defendants from liability. Therefore summary judgment is not justified on the theory of release.

We shall now consider the separate arguments of defendants F.D.V. de La Barre and Michael Shada for summary judgment.

## F.D.V. de LA BARRE'S SUMMARY JUDGMENT MOTION

■ In addition to arguments similar or identical to some already discussed in this order, defendant F.D.V. de La Barre raises four different issues. First, defendant claims that this case should be dismissed because of an absence of diversity jurisdiction. According to defendant de La Barre, defendant Nick Pope and plaintiff are citizens of Oklahoma for jurisdictional purposes. As plaintiff points out though, non-diverse defendants may be dismissed from a case under Fed.R.Civ.P. 21 for the preservation of diversity jurisdiction. *Miller v. Leavenworth-Jefferson Elec. Coop.*, 653 F.2d 1378 (10th Cir. 1981). Steps have already been taken to preserve this court's jurisdiction by dismissing Mr. Pope. Therefore, defendants' motion to dismiss because of the absence of diversity shall be denied.

■ The second new argument presented by defendant de La Barre is that this court may not exercise personal jurisdiction over him. In a related argument, defend-

ant claims that service of process is insufficient. We faced this issue earlier in this case as discussed at 445 F.Supp. 687 (D.Kan. 1978). At that time, we determined that the allegations of a conspiracy to commit a business tort which had foreseeable consequences in Kansas were sufficient to support a finding of personal jurisdiction over defendant. Defendant now contends that discovery has failed to support these allegations of the complaint. There is much evidence from which one may reasonably infer that defendant was part of the conspiracy alleged in the complaint. Defendant's alleged role in this conspiracy is sufficient for the exercise of personal jurisdiction. Cf., *Ammon v. Kaplow*, 468 F.Supp. 1304 (D.Kan.1979) (jurisdiction exercised over New York veterinarian whose contacts with Kansas appear less substantial than defendant de La Barre's.)

■ It should be noted that defendant's reliance upon the fact that some of his actions were taken as an agent or personal representative of another person or corporation is to no avail. The Kansas long-arm statute, K.S.A. § 60–308(b) applies to the personal representatives of persons committing torts or transacting business within the state.

In sum, a review of the record supports the exercise of personal jurisdiction over defendant de La Barre. The same review leads us to deny defendant de La Barre's motion for summary judgment on the grounds that he did not participate in the conspiracy alleged in the complaint. The evidence is sufficient to allow a jury to decide this question.

■ Finally, defendant has argued that this case should be dismissed because plaintiff has dismissed an indispensable party, Frank Leu from this action. Mr. Leu is alleged to have made purchases of Farm & Ranch stock on behalf of Louis Roussel. We must agree with the arguments and authorities well-presented by plaintiff against defendant's contention. Mr. Leu is no more than a joint tortfeasor or co-conspirator and, as such, is not an indispensable party. See, e.g., *Herpich v. Wallace*, 430 F.2d 792, 817 (5th Cir. 1970).

## MICHAEL SHADA'S SUMMARY JUDGMENT MOTION

Defendant Michael Shada argues that there is insufficient evidence in the record to substantiate his active personal involvement in the conspiracy charged in the complaint. We disagree. There is a sufficient indication in the record of defendant Shada's participation in Farm & Ranch stock purchases at the direction of Louis Roussel to overcome defendant's summary judgment motion. The motion shall be denied.

## CONCLUSION

In conclusion, summary judgment shall be granted against plaintiff's claim for interference with a prospective business advantage. Otherwise, defendants' motions are denied.

IT IS SO ORDERED.