**Mary Loftus FREEMAN, Plaintiff,**

v.

**KANSAS STATE NETWORK, INC., Topeka Television, Inc. a division of KSN, Inc., Dave Roberson, individually and as Station Manager of Kansas State Network, Inc., Al Sandubrae, individually and as Executive News Director of Kansas State Network, Inc., Robert Waddill, individually and as Executive Vice-president & General Manager of Kansas State Network, Inc., Defendants.**

No. 85–4038–S.

United States District Court,
D. Kansas.

July 24, 1989.

K. Gary Sebelius, Eidson, Lewis, Porter & Haynes, Topeka, Kan., for plaintiff.

Timothy B. Mustaine, Mary Kathleen, Foulston, Siefkin, Powers & Babcock Eberhardt, Wichita, Kan., for Kansas State Network, Inc., Topeka Television, Inc. and Al Sandubrae.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion for partial summary judgment. Plaintiff was employed by defendant Kansas State Network, Inc. ("KSN") and its predecessor from February 1, 1977 to June 10, 1983. Plaintiff claims her employment was terminated on grounds of her gender and because of her pregnancy. In the present motion, defendants seek summary judgment on all of plaintiff's state law claims and on a peripheral aspect of her Equal Pay Act claims. Defendants are not seeking summary judgment on plaintiff's federal sex discrimination claims. The court will specifically address the facts, as established for the purposes of this pending motion, when pertinent with regard to the challenged claims.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

## A. *Kansas Act Against Discrimination and Exhaustion of Remedies*

■ On June 10, 1983, defendants terminated plaintiff's employment with KSN. On August 19, 1983, plaintiff filed a complaint with the Kansas Commission on Civil Rights ("KCCR"), charging defendants with unlawful practices because of her sex. After this complaint had been on file with the state commission for nearly fifteen months, plaintiff requested and received a right-to-sue letter from the Equal Employment Opportunity Commission. The right-to-sue letter, dated December 1, 1984, advised plaintiff that she had ninety days in which to file a Tile VII claim. On February 1, 1985, plaintiff filed her initial complaint, requesting relief under Title VII, the Equal Pay Act, and state tort law. This complaint did not include a claim under the Kansas Act Against Discrimination ("KAAD"). On February 25, 1985, the KCCR advised plaintiff that it was dismissing her complaint because of her federal lawsuit. This dismissal was pursuant to a KCCR regulation, *see* K.A.R. 21–41–10. Thereafter, plaintiff amended her complaint in the federal action by adding a claim under the Kansas Act Against Discrimination.

Defendants seek summary judgment on plaintiff's claim under the Kansas Act Against Discrimination, K.S.A. 44–1001 *et seq.*, because plaintiff failed to exhaust her administrative remedies. The Act establishes the administrative process for pursuing a claim under the Kansas Act Against Discrimination. K.S.A. § 44–1005. The Kansas Supreme Court has held that the administrative remedies must be exhausted before recourse to the courts. *Van Scovk v. St. Mary's Assumption Parochial School*, 224 Kan. 304, 306, 580 P.2d 1315, 1318 (1978).

Defendants contend that plaintiff failed to exhaust her administrative remedies because she filed a federal lawsuit before the KCCR had made even a probable cause determination. Plaintiff argues that she did exhaust the required administrative remedies. Plaintiff contends that she did not assert a claim under the Kansas Act in her initial complaint in the federal court action because the administrative review of this claim was still pending with the KCCR. She claims she filed the federal suit to preserve her Title VII claim, which had to be filed within ninety days of her right-to-sue letter, and her tort claims, on which the statute of limitations period was approaching. After the suit was filed, the KCCR administratively dismissed plaintiff's complaint. Thus, she argues that the available

administrative remedy was exhausted and recourse could be made to this court.

The Kansas Supreme Court has stated that in certain cases the administrative proceedings are terminated prior to any adjudication by the KCCR. For example, if the KCCR makes a "no probable cause" finding, the Commission's doors are closed and the proceedings have been exhausted. *Id.* at 306, 580 P.2d at 1317. In such circumstances, the administrative remedies are exhausted. *Id.*

In the present case, the KCCR administratively dismissed plaintiff's claim without adjudication. Plaintiff raised a claim under the Act in this lawsuit only after the Commission had closed its doors to her.

Defendants argue that plaintiff should not be allowed to claim exhaustion of remedies because the KCCR dismissed her charge as a direct result of her filing the Title VII lawsuit. Defendants argue that plaintiff deliberately short-circuited the administrative process by filing this lawsuit.

Regardless of how it was accomplished, plaintiff did wait until the KCCR dismissed her charge before seeking recovery in the courts on that claim. Therefore, in this particular case, the court finds that the administrative remedies were exhausted. Plaintiff should not suffer because of the KCCR's decision to procedurally dismiss her charge without reaching the merits of that charge. If the court accepted the result requested by defendants, an inequity would fall upon plaintiff. Plaintiff would be forced to choose between her available forms of relief. Under defendants' theory, plaintiff would have to forego either her Title VII and tort claims and wait for the KCCR to proceed with her KAAD charge, or forego the KAAD claim and proceed only on the Title VII and tort claims. The court refuses to adopt this approach. The court finds that plaintiff properly waited until the KCCR terminated its proceedings before she brought her claim under the Kansas Act to court.

### B. *Fraudulent Inducement*

Plaintiff asserts a claim that she was fraudulently induced into signing the employment contract presented to her in early 1983, which included a covenant not to compete. Plaintiff's theory on this claim is that when defendants offered her the contract with the covenant not to compete, they had no intention of retaining her as an employee, but sought to have her bound by the covenant. Plaintiff claims that defendants never indicated the precarious or tenuous nature of her continued employment, even after her inquiries and voiced reservations about the restrictive covenant. Plaintiff contends that as a result of the fraudulent inducement, she incurred damages in the nature of attorney's fees and in obtaining the negotiated release from the covenant so that she could take a position with WIBW (a Topeka television station that competes with defendant KSN), and that she did not initially receive as good a position with WIBW as she could have absent the covenant.

The elements of fraudulent inducement are set out in *Earth Scientists Ltd. v. United States Fidelity & Guaranty Co.*, 619 F.Supp. 1465, 1472 (D.Kan.1985), a case in which plaintiff claimed defendant fraudulently induced it to purchase an insurance policy. To show fraudulent inducement, the plaintiff must prove: (1) that defendant made a false statement of fact; (2) defendant knew that the statement was false; (3) defendant made the statement with the intent to deceive and with reckless disregard for the truth of the statement; and (4) plaintiff justifiably relied on the statement and sustained injury. *Id.* The first element may be shown if defendant concealed facts which they were obligated to reveal. *See Citizen State Bank v. Gilmore*, 226 Kan. 662, 667, 603 P.2d 605, 610 (1979).

The established facts for purposes of this motion are as follows. In July of 1982, defendant KSN purchased Channel 27 in Topeka, Kansas. At that time, plaintiff was a 6:00 p.m. and 10:00 p.m. anchor of their news broadcast. KSN had a policy at its other stations that all front line, on-air employees were required to execute written contracts which included covenants not to compete with KSN. On February

22, 1983, defendants presented plaintiff with a proposed written employment contract which included a covenant not to compete. Similar proposed contracts were presented to plaintiff's co-anchor, Ron Harbaugh, and the sports anchor, George Frye. Channel 27's weather person at that time, Jerry Boehm, was not offered such a contract because defendants had decided not to keep his as the weather person. Plaintiff's new contract also provided for a pay raise from $23,760 to $25,000. Plaintiff was told that it was not necessary for her to execute the contract with the restrictive covenant to remain an employee of the station, but that she would not receive the pay raise unless she did execute the contract. In February of 1983, defendant KSN had hired Primo Associates to assist the KSN stations in improving ratings. In mid-March, plaintiff expressed to defendant Sandubrae her disfavor with the restrictive covenant in the proposed employment contract. She expressed her concern about not being able to obtain another job in broadcast announcing in the Topeka area if she was no longer employed with defendant KSN. Sandubrae told her in a flip manner that she just simply should not get fired. The employment contract had a provision that provided that it could be terminated by either party upon sixty days' notice.

On March 28, 1983, plaintiff signed the employment contract with the restrictive covenant. On May 10, 1983, defendants began reviewing tapes of female co-anchor applicants for the purpose of finding a replacement for plaintiff. Plaintiff contends that defendants had decided not to retain her employment prior to her execution of the employment contract. Defendants deny these allegations, but contend that their decision to replace plaintiff was not made until mid-April at the earliest, after several months of evaluating plaintiff's performance, and their desires for the future of the station's image.

The court finds that plaintiff has presented sufficient evidence by way of depositions to raise a sufficient questions of fact to prevent the court from granting summary judgment on this claim. There is suffi-cient dispute about when defendants decided not to retain plaintiff as an employee. It has not been established whether such decision occurred prior to or after plaintiff executed the employment agreement containing the restrictive covenant provision. Since a question of material fact remains, the court is not in a position to enter summary judgment on this claim. Therefore, defendants' motion for summary judgment will be denied.

■ Defendants also contend that plaintiff has not alleged her fraud claim with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. The purpose of Rule 9(b) is to enable a defending party to prepare an effective response to charges of fraud, and to protect the defending party from unfounded charges of wrongdoing, which might injure its reputation and goodwill. *NL Industries Inc. v. Gulf & Western Indus., Inc.,* 650 F.Supp. 1115, 1129–30 (D.Kan.1986). However, Rule 9(b) must be read in light of the provisions of Rule 8 for notice pleading. *See Seattle First National Bank v. Carlstedt,* 800 F.2d 1008, 1111 (10th Cir.1986); *NL Indus., Inc.,* 650 F.Supp. at 1130.

Plaintiff's second amended complaint states that at the time that defendant Sandubrae responded to plaintiff's concerns about the restrictive covenant, "defendants had no intention of retaining plaintiff as an employee." Also, in July of 1987, in response to defendants' second set of interrogatories, plaintiff informed defendants of her current theory of fraudulent inducement or concealment. *See* Plaintiff's Answers to Defendants' Second Set of Interrogatories Nos. 10 and 11. All in all, the court finds that defendants have been provided adequate notice of plaintiff's fraud theory to be provided an opportunity to prepare a defense to this theory. Therefore, defendants' motion to dismiss plaintiff's fraud claim because of Rule 9(b) is denied.

C. *Intentional Infliction of Emotional Distress (Tort of Outrage)*

■ In her complaint, plaintiff asserts a claim of intentional infliction of emotional

distress (outrage). Defendants move for summary judgment on this claim. To maintain this cause of action, plaintiff must present sufficient evidence to show that a reasonable factfinder might differ on: (1) whether defendants' conduct was so extreme and outrageous to permit recovery; and (2) whether the emotional distress suffered by plaintiff is so severe that no reasonable person should be expected to endure it. *See Polson v. Davis*, 635 F.Supp. 1130, 1150 (D.Kan.1986) (citing *Roberts v. Saylor*, 230 Kan. 289, 292–93, 637 P.2d 1175, 1180 (1981)). The court must make an initial determination on whether these threshold requirements to the claim have been met. *See Burgess v. Perdue*, 239 Kan. 473, 475–76, 721 P.2d 239, 242 (1986).

Regarding the first issue of whether defendants' conduct was extreme and outrageous, plaintiff has the heavy burden of showing that defendants' conduct was "atrocious and utterly intolerable in a civilized society." *Roberts v. Saylor*, 230 Kan. 289, 293, 637 P.2d 1175, 1179 (1981). Evidence of an endless stream of vulgar, racist invective or threats of violence by a defendant have been found to be sufficient to maintain a claim of outrage. *See Gomez v. Hug*, 7 Kan.App.2d 603, 610–11, 645 P.2d 916 (1982), *cited in Fletcher v. Wesley Medical Center*, 585 F.Supp. 1260, 1262 (D.Kan.1984).

The evidence plaintiff presents in support of her intentional infliction of emotional distress claim is that defendants, without any warning or notice to plaintiff, advised her of her termination just three days after the birth of her second child and on the very day that she returned home from the hospital. Plaintiff has presented expert evidence that a new mother is particularly susceptible to emotional distress and that depression and oversensitivity to criticism or life events (such as the loss of a job) is quite likely in her postpartum period. Defendant Waddill instructed defendants Sandubrae and Roberson to advise plaintiff that she was being discharged. Defendants Sandubrae and Roberson went to plaintiff's home on the day she returned from the hospital and informed her that she was being replaced. Neither Sandu-

brae nor Roberson said anything derogatory or demeaning to plaintiff. They conveyed the unwelcomed information in a polite manner and without evidence of pleasure.

The court finds that the evidence does not establish a conduct on the part of defendants that is so extreme and outrageous to permit recovery. Although the court may feel that the behavior was unthoughtful and lacked tact, the conduct was not so extreme as to allow plaintiff to pursue a claim under Kansas common tort law as it now exists. In *Roberts v. Saylor*, 230 Kan. 289, 637 P.2d 1175 (1981), defendant doctor told plaintiff that he did not like the plaintiff. At the time, plaintiff was lying on a gurney in a hospital, about to be wheeled into an operating room for surgery. The Kansas court found that plaintiff Roberts failed to show conduct by defendant entitling her to relief under the tort of outrage. The court held that the tort was not a remedy for mere bad manners. *See id.* at 293, 637 P.2d at 1179; *see also Burgess*, 239 Kan. at 477, 721 P.2d at 242–43 (Mother of deceased son was told during her period of bereavement that her son's brain was not buried with his body as she had wished. The court found no cause of action for outrage based on the conveyance of that information.) The conduct of which plaintiff complains cannot be considered extreme or outrageous in light of recent Kansas cases.

**D.** *Negligent Infliction of Emotional Distress*

■ Defendants move for summary judgment on plaintiff's negligent infliction of emotional distress claim. Under Kansas law, plaintiff cannot recover damages for emotional distress caused by defendant's negligence unless it is accompanied by a resulting physical injury to the plaintiff. *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 274, 662 P.2d 1214, 1219–20 (1983). A physical injury must occur contemporaneously with or shortly after the incident causing the emotional distress. *Id.* at 275, 662 P.2d at 1220–21.

Defendants contend the alleged physical injury, plaintiff's inability to lactate, did not occur immediately after the alleged emotionally disturbing conduct. For the purposes of this motion, the parties assume that defendants' conduct in advising plaintiff of her termination caused plaintiff severe mental distress and physical injury. The resulting physical injury was plaintiff's inability to lactate, which prevented her from breast-feeding her child. This injury manifested itself within six to seven weeks after the alleged emotional disturbance.

In the present motion, defendants argue that plaintiff's injury, which occurred six to seven weeks after the June 10, 1983 incident, is not near enough in time to meet the physical injury requisite of a negligent infliction of emotional distress claim. Defendants contend that no Kansas case has ever found an injury occurring after such a substantial length of time to meet the test. In *Hoard*, the court found that physical injuries occurring six weeks to two years after the claimed emotionally disturbing incident could not support the plaintiff's claim. The court in *Hoard*, however, found the physical injuries insufficient because plaintiff could not show that the injuries were the direct or proximate cause of the emotional distress caused by defendants' alleged negligent conduct. *Id.* at 277–79, 662 P.2d at 1221–23. The court did not find that the claim failed because of the temporal condition of the physical injuries. For the purposes of the present motion, causation is assumed, therefore the court does not need to address the issue of causation.

Plaintiff has presented expert evidence that cessation of lactation may occur within a matter of hours or a matter of weeks after a stress inducing event. Thus, given the nature of the specific physical injury involved, a period of six weeks, although substantial, is not unusual and should not be detrimental to plaintiff's claim. Moreover, the purpose of the physical injury requirement is not defeated because of the substantial delay in time after the incident in this case. The reason for making physical injury a requisite to a claim for negligent infliction of emotional distress is to substantiate the claim. Emotional distress can be easily feigned or counterfeited. Also, emotional distress is a common experience of life and is usually trivial. Therefore, the courts limit recovery to cases involving severe emotional distress which is evidenced and substantiated by actual physical injury. *See id.* at 274, 662 P.2d at 1220 (quoting Prosser, *Law of Torts*, § 54, p. 329). Here it is assumed for the purposes of this motion that plaintiff's inability to lactate was a direct result of defendants' conduct. Under this assumption, the inability to lactate substantiates the alleged emotional distress and fulfills the purpose of a physical injury requirement. For these reasons, the court will deny defendants' motion for summary judgment on plaintiff's negligent infliction of emotional distress claim.

E. *Tortious Interference with a Prospective Business Advantage.*

Plaintiff asserts a claim that defendants intentionally interfered and precluded plaintiff from procuring employment. Plaintiff bases this claim on defendants' inclusion of a restrictive covenant clause in her employment contract. *See* Pretrial Order at page 6. Plaintiff argues that but for the restrictive covenant, she could have received a better initial position with WIBW News, a Topeka television station which competes with defendant KSN.

This court has previously set forth the essential elements of an intentional interference with a business relationship claim. *See Maxwell v. Southwest Nat'l Bank*, 593 F.Supp. 250, 253 (D.Kan.1984) (citing *Professional Investors Life Ins. Co. v. Roussel*, 528 F.Supp. 391 (D.Kan.1981)). Plaintiff must show the following: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendants; (3) that, except for the conduct of the defendants, plaintiff was reasonably certain to have continued in the relationship or realized the expectancy; (4) intentional misconduct by defendants; and (5) damages suffered by plaintiff as a direct proximate result of defendants' miscon-

duct. *Maxwell,* 593 F.Supp. at 253. These elements have been approved by the Kansas Supreme Court in *Turner v. Haliburton Co.,* 240 Kan. 1, 12, 722 P.2d 1106, 1115 (1986).

The following relevant facts for this claim have been established for the purposes of this motion. After defendants terminated plaintiff's employment, plaintiff immediately contacted Jim Hollis, news director of WIBW–TV to inquire about job prospects with his station. Hollis offered plaintiff a part-time news anchor position. This position would require plaintiff to do early morning cut-ins and the noon news, and occasionally substitute for absent anchors on the evening broadcast. WIBW also had an opening for the 10:00 p.m. anchor position. This position was filled by John Holt, who had been working for WIBW as a reporter.

Plaintiff told WIBW of her covenant not to compete with KSN. WIBW told KSN of its desire to hire plaintiff for the early morning cut-in and noon news position. WIBW, plaintiff, and defendant KSN negotiated a release for plaintiff from the restrictive covenant so that she could take the position offered her at WIBW. In August 1983, plaintiff began working at WIBW. By April of 1984, plaintiff was given the 10:00 p.m. producer/reporter position at WIBW.

Apparently, plaintiff's tortious interference claim with a prospective business expectancy is based on her expectancy in receiving a better initial position with WIBW, specifically the 10:00 p.m. anchor position. *See* plaintiff's response, pp. 45–46. The court finds that plaintiff has failed to show sufficient evidence of the knowledge element of this claim to withstand summary judgment. Defendants have properly indicated to the court that plaintiff has no evidence that defendants ever knew that she was considered for or had any expectancy in the 10:00 o'clock anchor position at WIBW. After defendants have pointed out this lack of evidence, plaintiff has still provided no showing of defendants' knowledge regarding this expectancy. Instead, plaintiff argues that it is not necessary to show that defendants knew of her expectancy in a particular position, but that they generally knew that she could have received a better position. To claim an interference with prospective business advantage, however, plaintiff must show that defendants had knowledge of the expectancy that plaintiff was reasonably certain to realize. The only expectancy, besides the early morning cut-in and noon news position, that plaintiff has made any type of showing of a reasonable certainty of realizing is the 10:00 p.m. anchor position. With regard to that position, there is no evidence or inference to indicate that defendants ever knew that plaintiff was being considered for that position. Without such showing of knowledge of an expectancy which plaintiff was reasonably certain to realize, plaintiff's tortious interference with a prospective business advantage claim must be dismissed. Therefore, the court will grant defendants' motion for summary judgment on this claim.

### F. *Individual Liability of Defendant Waddill and Roberson.*

■ Defendants Waddill and Roberson contend that they had no participation in the setting of plaintiff's salary, inducing her to sign the employment contract or in the post-termination negotiations over the restrictive covenant. Because of the lack of involvement in these matters, these defendants argue that they are entitled to summary judgment on plaintiff's Equal Pay Act, fraudulent inducement claims and tortious interference claims. Since the court has granted summary judgment on the tortious interference claims, the individual defendants' motions regarding those motions are moot.

Plaintiff does not contest the entry of summary judgment in favor of defendant Roberson regarding the Equal Pay Act and fraudulent inducement claims. The court therefore will grant defendant Roberson's motion for summary judgment on the Equal Pay Act claim and fraudulent inducement claim.

With respect to defendant Waddill, plaintiff contends that as executive vice presi-

dent and general manager of KSN, Waddill falls within the definition of responsible persons under the Equal Pay Act. An "employer," under the Equal Pay Act, is defined as any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d). Moreover, defendant Waddill supervised defendant Sandubrae's determination of plaintiff's salary. Also, plaintiff argues that it was Waddill's decision to offer plaintiff the written employment contract with the restrictive covenant. Thus plaintiff argues that Waddill is not entitled to summary judgment on the Equal Pay Act claim or the fraudulent inducement claim.

The court finds that there is a sufficient question remaining with regard to Waddill's involvement in the setting of plaintiff's salary. The court will deny defendant Waddill's motion for summary judgment with regard to the Equal Pay Act claim.

■ The court further finds that since a sufficient question of fact remains regarding when defendants decided not to retain plaintiff, summary judgment on the fraudulent inducement claim against defendant Waddill is not appropriate at this time. A question remains whether Waddill had decided not to retain plaintiff when he decided that she should be offered an employment contract with a restrictive covenant. The court will, therefore, deny Waddill's motion with regard to the fraudulent inducement claim.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion for summary judgment on plaintiff's Kansas Act Against Discrimination claim is denied. IT IS FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's fraudulent inducement claim is denied. IT IS FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's intentional infliction of emotional distress is granted. IT IS FURTHER ORDERED that defendants' motion for summary judgment on plaintiff's negligent infliction of emotional distress is denied. IT IS FURTHER ORDERED that

defendants' motion for summary judgment on plaintiff's tortious interference with a prospective business advantage claim is granted. IT IS FURTHER ORDERED that defendant Roberson's motion for summary judgment on plaintiff's claims of fraudulent inducement and Equal Pay Act violation is granted. IT IS FURTHER ORDERED that defendant Waddill's motion for summary judgment on plaintiff's claims of fraudulent inducement and Equal Pay Act violation is denied.