No. 50,086

CITIZENS STATE BANK, MOUNDRIDGE, KANSAS, *Appellant,* v. WILLIAM C. GILMORE, SR., and TEDDY W. PULS, *Appellees.*

(603 P.2d 605)

Opinion filed December 1, 1979.

*Michael T. Mills,* of Mills & Mills, of McPherson, argued the cause and *Charles I. Prather,* of the same firm, was with him on the brief for appellant.

*Christopher Randall,* of Turner & Boisseau, of Wichita, argued the cause and was on the brief for appellee, William C. Gilmore, Sr.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by plaintiff, Citizens State Bank, Moundridge, Kansas, (Bank), from an order granting the defendants, William C. Gilmore, Sr. and Teddy M. Puls, summary judgment. Defendants' motion was sustained prior to any pretrial conference and prior to the completion of discovery.

Plaintiff filed this action against the two defendants on multiple theories of indirect fraud, conspiracy to commit fraud and absolute liability for violation of statutes. Plaintiff sought to recover damages sustained from financing the purchase of certain dairy cattle which had been quarantined and were infected with, or exposed to, brucellosis. Brucellosis in cattle has the ultimate effect of damaging a cow's reproductive organs and causing abortion in infected cattle. It is also the source of undulant fever in humans. It is a serious and highly contagious disease in cattle and is greatly feared by all cattle owners as it may result in the loss of an entire breeding or dairy herd.

In considering the motion for summary judgment, the plaintiff in this case is entitled to the benefit of all reasonable inferences and doubts that may be drawn from the facts under consideration.

*Pedi Bares, Inc. v. First National Bank,* 223 Kan. 477, 575 P.2d 507 (1978). Also the pleadings are to be given a liberal construction in favor of the plaintiff in this case. *Lorson v. Falcon Coach, Inc.,* 214 Kan. 670, 522 P.2d 449 (1974). Ordinarily a motion for summary judgment should not be sustained so long as pretrial discovery remains incomplete. *Temmen v. Kent-Brown Chevrolet Co.,* 217 Kan. 223, 535 P.2d 873 (1975). Where genuine issues of material fact remain undetermined, the granting of summary judgment is improper. *Kern v. Miller,* 216 Kan. 724, 533 P.2d 1244 (1975).

With the foregoing principles in mind we will turn to the issues raised in this appeal. As the rulings of the trial court hinge mainly upon an interpretation of the plaintiff's petition, we will summarize its principal allegations. The petition is long, rambling and contains many extraneous allegations, but basically we would summarize it as follows:

Defendant Gilmore, a buyer and seller of cattle, had a dairy and breeding herd in late 1973 and early 1974 which was tainted with brucellosis. During this period, and with full knowledge that his entire herd was quarantined by state officials, Gilmore sold cattle to Gaede and his partner, Kiser, and also sold 15 or 16 head of cattle to Gaede through defendant Puls, all such sales being in violation of certain specified Kansas statutes and regulations of the Kansas livestock sanitary commissioner prohibiting such sales. In March, 1974, Gaede wanted to purchase 15 or 16 head of dairy heifers (the petition is inconsistent in that it refers to 15 in some instances and 16 in others). He approached Gilmore. Gilmore's herd was still under quarantine. Gilmore referred Gaede to Puls. Puls then sold 15 or 16 dairy cattle (Gilmore-Puls cattle) to Gaede, which actually were Gilmore's cattle. Puls represented the cattle to be disease-free. Gaede, in order to purchase the cattle, innocently represented to the Bank that he was purchasing healthy dairy cattle. The Bank lent Gaede $9,000 and took a security interest in the Gilmore-Puls cattle purchased by Gaede and which later turned out to be either diseased or exposed to disease. Gilmore knew Gaede was obtaining financing from the Bank and he, through or in concert with Puls, withheld the information that the Gilmore-Puls cattle were under quarantine due to brucellosis in the Gilmore herd. In April, 1974, Gaede acquired all of

the interest of his partner Kiser in the cattle which Gaede and Kiser had owned in partnership. All of these cattle had also come from the Gilmore herd at a time when the herd was under quarantine. The petition alleges a conspiracy in that if Puls was not an innocent party, then Gilmore and Puls conspired together to sell the quarantined cattle to Gaede with full knowledge the Bank was financing the purchase. After Gaede filed bankruptcy all his cattle, which had come from the quarantined Gilmore herd one way or another and were infected with or exposed to brucellosis, were sold for slaughter and plaintiff Bank realized only $2,553.90. The Bank sought actual and punitive damages based upon indirect fraud, conspiracy to commit fraud and violation of statutes and regulations governing the sale of cattle.

The answer of the defendants consisted of a general denial and in addition alleged defenses including failure to state a claim upon which relief could be granted, that plaintiff was not a real party in interest, and that the petition failed to state with particularity the circumstances of fraud and conspiracy to commit fraud. After limited discovery Gilmore filed an instrument entitled "Memorandum In Support of Motion" which the court evidently treated as a motion for summary judgment and in ruling thereon dismissed the plaintiff's petition as to both Gilmore and Puls. William C. Gilmore, Jr., originally a defendant, was dismissed from the case by agreement of the parties. This is not the first time Gilmore's cattle have been the subject of litigation in the appellate courts. For those interested in the complaints of Kiser (Gaede's partner) against Gilmore, see *Kiser v. Gilmore,* 2 Kan. App. 2d 683, 587 P.2d 911, *rev. denied* 225 Kan. 844 (1978).

The trial court, in dismissing plaintiff's petition, made the following conclusions of law:

"1. There are no disputed material issues of fact as it relates to the defendants' Motion.

"2. The Plaintiff is not a real party in interest nor does it have standing to sue the defendants for the relief claimed in its petition.

"3. The Plaintiff's petition does not state a claim upon which relief can be granted against these defendants.

"4. The Plaintiff's petition fails to state with particularity the facts and circumstances constituting the alleged fraud as required by K.S.A. 60-209(b) nor does it allege facts sufficient to constitute a conspiracy and resulting damage.

"5. That the defendants are entitled to judgment based upon the foregoing conclusions when considered either jointly or individually."

Appellant's first point on appeal is that the trial court erred in concluding plaintiff was not the real party in interest and had no standing to sue for the relief claimed. Appellant asserts its cause of action is based upon indirect fraud, conspiracy to defraud and violation of statutory obligations by defendants.

Appellee Gilmore argues that as there was no direct contact between Gilmore and the Bank, it is not a proper party and cannot bring this action. Puls' position is not clear. He appeared pro se in the trial court and has filed no brief with this court. With the exception of filing a pro se answer copied from that of Gilmore, Puls appears to have taken a free ride throughout these proceedings. His strategy has been successful to date as the trial court dismissed plaintiff's petition as to both defendants.

It appears to be undisputed that Gilmore sold cattle to Gaede and/or Kiser during the period from December 1, 1973, to April 26, 1974, which were under quarantine by state officials due to the presence of brucellosis reactors in Gilmore's herd. It also appears clear, based upon the petition and the limited discovery in the trial court, that Gilmore, through Puls, sold 15 or 16 head of cattle which were under quarantine to Gaede on or about March 12, 1974. Plaintiff asserts such sale was made either innocently by Puls due to misrepresentations of Gilmore, or was made as a part of a conspiracy between Gilmore and Puls to sell quarantined cattle to Gaede. The record reflects that the sale price of the 15 or 16 head of dairy cattle was $9,000 and that Gilmore received $8,900 and Puls $100. The cattle, being under quarantine, were sold in direct violation of K.S.A. 47-624 and K.A.R. 9-2-17 and 9-2-31. Briefly stated, the statutes and regulations provide that cattle which have been quarantined for brucellosis, with some exceptions not applicable in this case, may not be sold or transported without prior testing and consent from the State livestock sanitary commissioner. Violation of 47-624 is a misdemeanor. The Bank, upon representations by Gaede that he and Kiser had a healthy dairy herd and that Gaede wanted to purchase 15 or 16 additional head of healthy dairy cattle, agreed to lend $9,000 for the purchase of the Gilmore-Puls cattle. The facts that the cattle were actually owned by Gilmore, that they were under quarantine for brucellosis, that some or all of such cattle had been exposed and might be infected with brucellosis, were not disclosed by Puls to Gaede and as a result were not disclosed by Gaede to

plaintiff Bank. If such facts had been known by Gaede and disclosed to the Bank it is a fair assumption that the Bank would not have made the loan to Gaede in reliance upon a security interest in the cattle. When Gaede went bankrupt his obligation to the Bank was discharged and the Bank suffered a loss in the amount of its loan and accrued interest less the proceeds of the sale of the cattle for slaughter. If the cattle had been healthy dairy cattle, not infected with or exposed to brucellosis, they could have been sold as dairy cattle rather than for slaughter for a sufficient sum to cover all or most of the secured interest of the Bank. Under such circumstances, where actual, intentional fraud is alleged upon the part of the seller, does the financing creditor, who no longer has a right of recovery from its debtor, have a cause of action against the seller? We think so.

In an attempt to define the parameters of fraud, it has been said:

"While the broad outlines of fraud have been indicated by regarding it as including any cunning, deception, or artifice used, in violation of a legal or equitable duty, to circumvent, cheat, or deceive another, the forms it may assume and the means by which it may be practiced are as multifarious as human ingenuity can devise, and the courts consider it unwise or impossible to formulate an exact, definite, and all inclusive definition thereof. It is synonymous with, or closely allied to, other terms indicating positive and intentional wrongdoing, but is distinguishable from mistake and negligence." 37 C.J.S., Fraud § 1, p. 204.

At the outset, it should be pointed out that fraudulent misrepresentation not only includes affirmative acts and misstatements of fact but also the concealment of acts and/or facts which legally or equitably should be revealed. The fraudulent misrepresentations in the case at bar were principally of the latter category and consist of the concealment of facts rather than an affirmative misstatement of facts.

Ordinarily, as a broad principle of law, the right of the Bank in this case would be principally against its debtor, Gaede, and its security interest in the cattle. It appears that the trial court was of the impression that the creditor in this case could not recover against the parties who instigated the fraud unless there was some direct connection between the defrauding sellers and the creditor Bank. That is, there was no sufficient privity between the Bank and the defendants to give the Bank standing to sue.

"Where a person, by the practice of fraud, unjustly deprives another of his property, and the defrauded person does not attack the transaction, his creditors cannot maintain an action of deceit against the one guilty of the fraud on the

ground that the latter has diminished their debtor's means of making payment, the remedy of the defrauded debtor being personal to him and not inuring to his creditors. The creditor of a bankrupt may, however, sue for deceit against a third person whose false representations induced the giving of credit, the right of action not being confined to the trustee in bankruptcy." 37 C.J.S., Fraud § 60c, p. 346.

This court has recognized that in some cases a third party may have an action for fraud without any direct contact with and without having received any direct misrepresentations from the defrauding party. *Griffith v. Byers Construction Co.,* 212 Kan. 65, 510 P.2d 198 (1973).

In *Byers* the purchasers of new homes brought an action against the developer of a subdivision in Wichita for damages because of a saline condition in the soil which precluded or greatly retarded the ability to landscape the homesites and grow any vegetation thereon. It was alleged that the defendant Byers Construction Company was the owner and developer of an area in east Wichita which had at one time been an oil field. Production of oil and the resultant by-product of salt. water had so polluted the soil that the growth of grass, shrubs or other vegetation was all but impossible. It was alleged that Byers had graded and developed the whole subdivision in such a manner that the saline areas were concealed from prospective purchasers. The actual homesites were sold by Byers to various builders who constructed a house on each lot and eventually sold the house and lot to the homeowner. Plaintiffs were homeowners who had purchased their homes from various builders who were not made parties to the case. There was no direct contact between Byers and the ultimate purchaser. Title came to the purchaser from the builder and not from Byers. Plaintiffs sued on two theories: (1) breach of an implied warranty of fitness, and (2) fraud in the concealment of a material matter. Summary judgment was rendered for the defendant and plaintiffs appealed to this court. This court found no validity to the claim of breach of warranty but held the purchasers had stated a cause of action for fraud. One of Byers' contentions was there was no privity between plaintiffs and defendant and therefore, plaintiffs failed to state a cause of action. This court held otherwise.

In *Byers* this court stated:

"The appellee Byers next contends, without agency, there can be no privity and without privity there can be no duty to disclose. Here, of course, appellants never dealt with the appellee, Byers. The duty to disclose the saline nature of the soil

must extend to appellants if their fraud claims are to be upheld. However, the doctrine of privity provides no defense to appellee Byers if appellants were within a class of persons appellee intended to reach. Liability for misrepresentation is not necessarily limited to the person with whom the misrepresenter deals. The rule is embodied in Restatement, Second, Torts, § 531 (Ten. Draft No. 10, 1964):

'One who makes a fraudulent misrepresentation is subject to liability for pecuniary loss

'(*a*) To the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation; and

'(*b*) For pecuniary loss suffered by them through their reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.'

. . . .

"Under the alleged facts of our present case, accepting the same in the light most favorable to the appellants, we must assume the appellee, Byers, had knowledge of the saline content of the soil of the lots it placed on the market. After the grading and development of the area this material defect in the lots was not within the fair and reasonable reach of the vendees, as they could not discover this latent defect by the exercise of reasonable care. The silence of the appellee, Byers, and its failure to disclose this defect in the soil condition to the purchasers could constitute actionable fraudulent concealment under the rule in *Jenkins v. McCormick,* supra [184 Kan. 842, 339 P.2d 8 (1959)]. One who makes a fraudulent misrepresentation or concealment is subject to liability for pecuniary loss to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation or concealment.

. . . .

"As to privity we do not believe it is important to categorize its existence under a particular legal theory. Suffice it to say the appellants were in that class of persons desiring building lots in a choice residential area whom appellee intended and had reason to expect would purchase and build their homes. The fact that title was first taken in the names of the builders did not change the identity of those who would be ultimately affected by any fraudulent misrepresentations or nondisclosure of material defects in the lots. The building contractors were acting on behalf of their respective purchasers as a conduit or temporary way station for the legal title which, it was understood, would pass on completion of the homes to the appellants. There is no lack of privity in this case which would prevent causes of action based on fraud, and, in this, the district court erred in entering summary judgments for the appellee, Byers." pp. 71-73.

The rule set forth in *Byers* was adopted in the final draft of the Restatement. Restatement (Second) of Torts §§ 531 and 533, provide:

"One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced." p. 66.

"The maker of a fraudulent misrepresentation is subject to liability for pecuniary

loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved." pp. 72-73.

In the early case of *Ultramares Corporation v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931), in an opinion by Justice Cardozo, the Court of Appeals of New York held that a lending institution which furnished credit to a debtor based upon a fraudulent financial statement had a cause of action for fraud directly against the debtors' accountants who prepared the statements. In *Ultramares* the defendants were an accounting firm hired by Stern & Co. to prepare and certify a balance sheet exhibiting the condition of its business as of a certain date. The balance sheet was prepared and it showed that Stern & Co.'s capital and surplus were intact. In reality both had been wiped out, and the corporation was insolvent. The plaintiff, Ultramares, was approached by Stern with a request for loans. After examining the balance sheet prepared by defendants a substantial sum of money was lent to Stern. Subsequently, Stern went bankrupt and Ultramares filed suit for fraud to recover their loss directly against the accountants. The court held that the defendants owed a duty to creditors and investors to whom the employer exhibited the balance sheet and that the defendants were liable to the creditors if the defects in the balance sheet were the result of fraud or reckless misstatement. *Ultramares* was one of the early cases that held the requirement of privity between the tort-feasor and the injured party in a fraud case is not always necessary. See also *Ver Wys v. Vander Mey,* 206 Mich. 499, 173 N.W. 504 (1919).

*Ultramares* was cited in the recent case of *DuShane v. Union Nat'l Bank,* 223 Kan. 755, 576 P.2d 674 (1978), although in *DuShane* the court found no actionable fraud due to the lack of any legal or equitable obligation to disclose the concealed facts. However, in *DuShane* the court stated:

"Where a plaintiff and defendant are not bargaining with each other *and the defendant obtains no advantage from suppressing or concealing information* about a third party the law has generally absolved the defendant of liability unless he has made a statement which induced the plaintiff to act, knowing that the statement was false or at least making it recklessly. (*Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 [1931].)" p. 761. (Emphasis added.)

In the case at bar, assuming plaintiff can prove its allegations,

the defendant Gilmore, individually or in concert with Puls, deliberately set out to sell diseased or exposed cattle to Gaede knowing Gaede was going to obtain financing for the purchase of the cattle from the plaintiff Bank. Plaintiff Bank falls squarely within the rule of the Restatement in that it was a person or within that class of persons that Gilmore had reason to expect to act in reliance on the misrepresentation that the cattle were healthy. The fact that the misrepresentation consisted of a concealment of material facts rather than a material misstatement of facts does not alter the situation. Defendants certainly obtained an advantage ($9,000) by concealing the facts. Even though not very artfully drawn, we hold that based upon the allegations of the petition plaintiff was a real party in interest, had standing to sue and has stated a cause of action.

Appellant's second point is the district court erred in holding the petition did not state with particularity the circumstances and facts constituting fraud or a conspiracy to defraud. The facts alleged in the petition have already been summarized and in determining their sufficiency we must look at all the allegations of the petition and read them in context with each other. Defendant contends that the only allegation of conspiracy is found in paragraph 22 of the petition which reads:

"22. Alternatively, Gilmore and Puls entered into a conspiracy to defraud Gaede and any lending institution Gaede would acquire purchase money financing from. The conspiracy was that Gilmore, whose entire cattle herd was under quarantine would transfer possession of 16 dairy cattle from said herd to Teddy Puls, whose dairy herd was not then in quarantine. Both Gilmore and Puls knew that Gilmore could not lawfully sell dairy cattle from Gilmore's herd. Gaede contacted Gilmore to purchase 16 dairy cattle for which he had financing assured at the Citizens State Bank. Sometime on March 11, March 12, or March 13, 1974, 16 head of Gilmore dairy cattle were transferred to Puls. Puls knew the cattle were being sold out of quarantine for the reason that Gilmore's herd had a bangs reactor in it. Gaede purchased 16 dairy heifers which were in fact exposed to or infected with brucellosis."

One authority states the elements of a civil conspiracy as (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. 15A C.J.S., Conspiracy § 1(2), p. 599. When the petition is given a liberal construction, as it must be, the allegations of fraud and a conspiracy to defraud are stated with sufficient particularity to meet the minimum requirements of the statute.

K.S.A. 60-209(*b*). Certainly the allegations that Gilmore and Puls conspired together to sell Gaede diseased or exposed cattle in violation of Kansas statutes and regulations knowing Gaede was financing the purchase through plaintiff Bank, along with the other facts set forth herein, meet the minimum requirements of the statute both as to fraud and conspiracy to defraud.

Finally, appellant contends that the sale of the cattle in violation of K.S.A. 47-624 and K.A.R. 9-2-17 and 9-2-31 creates a cause of action per se. We do not agree. A violation of the statute is a misdemeanor but does not in and of itself create a separate cause of action. If the legislature had meant for such a violation to create a cause of action, it could have so provided. See K.S.A. 47-638 for an example of such a remedy specifically provided by the legislature. Of course, evidence of the violation of the statutes and regulations could be competent evidence on the issues of whether an actual fraud had been perpetrated.

In summary, we hold that, under the facts alleged in this case, plaintiff has standing to bring the action for fraud and conspiracy to commit fraud; that the petition states a cause of action; that the allegations of fraud and conspiracy to commit fraud are stated with sufficient particularity to withstand summary judgment and that summary judgment was erroneously granted.

The judgment is reversed and the case remanded with directions to reinstate the action and for further proceedings in accordance with the views expressed above.

FROMME, J., not participating.