**LEARJET CORPORATION, Plaintiff,**

v.

**Robert J. SPENLINHAUER, Defendant.**

**Civ. No. 88–0125–P.**

United States District Court,
D. Maine.

Feb. 14, 1989.

John J. Flaherty, Jeffrey T. Edwards, Preti, Flaherty, Beliveau & Pachios, Portland, Me., Michael A. Meyer, Lord, Bissell & Brook, Chicago, Ill., for plaintiff.

John M.R. Paterson, Durward W. Parkinson, Ross A. Hugo–Vidal, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for defendant.

GENE CARTER, District Judge.

*MEMORANDUM OF DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ITS CLAIM AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE COUNTERCLAIMS*

In this matter Plaintiff seeks payment for maintenance and modification work it performed on a Learjet aircraft owned by Defendant. Defendant has counterclaimed in counts alleging negligence, fraud, breach of warranty, and violation of Federal Air Regulations. Before the Court now is Plaintiff's motion to dismiss or for summary judgment on the counterclaims and its motion for summary judgment of its claim on account. Under Maine choice-of-law rules, *see Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975), the state with the most significant relationship to the events surrounding the issues raised in the counterclaim is Kansas. *See Beaulieu v. Beaulieu*, 265 A.2d 610 (Me.1970); *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 934 (Me. 1982). Therefore, with the agreement of both parties, Defendant–Counter–claimant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and to Dismiss at 1 and Memorandum of Points and Authorities in Support of Learjet's Motions to Dismiss and for Summary Judgment at 5–9, this Court will apply Kansas law. *See Adams v. Gates Learjet Corp.*, Civ. No. 4–86–782–E (N.D.Tex. Aug. 9, 1988) (finding Kansas law applicable in a multiple plaintiff action against Learjet raising the same issues raised by Defendant's counterclaim here).

The undisputed[1] facts show that Defendant purchased a Model 24F Learjet from Plaintiff in 1977. In response to Plaintiff's application, the Federal Aviation

---

1. Defendant did not comply with Fed.R.Civ.P. 56(f) in responding to Plaintiff's motion, and the Court denied Defendant's Motion for a Stay or for Continuance of Further Briefing Pending Completion of Discovery. In that order on December 16, 1988, the Court ordered Defendant to respond to the summary judgment motion within ten days. The order warned that Defendant's failure to respond would result in the Court's deciding the motion in accordance with Rule 19(b)(2). *See McDermott v. Lehman*, 594 F.Supp. 1315 (D.Me.1984). That admonition made clear that the Court expected a response to Plaintiff's statement of material facts within the ten-day period.

On December 29, 1988, Defendant moved for an extension of the time to respond to Plaintiff's motion until January 17, 1989. The Court granted the extension. Despite the extension, Defendant has only partially complied with the order. Rather than responding in full, Defendant has filed a response to parts of Plaintiff's statement of material facts and has moved under Rule 56(f) for further discovery before responding to some of the facts.

The time for a Rule 56(f) motion has passed, as was made clear in the Court's December 16 order. Since Defendant, even with a two-and-one-half-week extension of time, has failed to file responses to all of Plaintiff's facts, the Court will apply Rule 19(b)(2) and deem those facts asserted by Plaintiff and not responded to by Defendant to be admitted.

The Court notes that the affidavit of Durward W. Parkinson states that it is impossible to respond to portions of the motion because of the limited amount of discovery which has occurred and again states that it is unfair to require

Administration (FAA) issued a type certificate for the Model 24 in 1966 and for the Model 24F in 1976. In 1981, the FAA issued Airworthiness Directive (AD) 81–16–08 restricting Defendant's aircraft from a 51,000 foot service ceiling to 45,000 feet. Revision 3 of Optional AD 81–16–08, issued in 1983, permitted operation of the aircraft at 51,000 feet if service kits AMK 81–12, 82–4, and 82–5 were installed. AD 84–17–02, issued in 1984, required installation of service kits AMK–13B, 82–4, and 82–5 on Defendant's aircraft if AD 81–16–08, revision 3, had not been complied with.

In July 1986 Defendant's undamaged plane was delivered to a Learjet service center for installation of these kits. The AD work on Defendant's plane is shown on work order 3–3241–6354–04 dated July 25, 1986. Doug McCullom authorized the work on Defendant's behalf. Defendant received an invoice for $39,253.27 for the modifications. Although he has acknowledged the invoice, he has not paid it.

### Negligence

Count I of the counterclaim alleges that Plaintiff negligently designed both the horizontal stabilizer trim actuator system and the flight control systems' stall warning systems on the Learjet Model 24. Defendant claims compensatory and consequential damages for the repairs to these systems on his plane made in accordance with AD 84–17–02. Plaintiff has moved for summary judgment on the grounds that Kansas law does not permit recovery in tort for purely economic losses. The Court agrees.

In 1965 the California Supreme Court articulated the seminal majority rule for determining the border line between tort and contract recovery. In *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), the court held that economic loss caused by qualitative defects cannot be recovered in tort. In *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1581 (10th Cir.1984), the Court of Appeals for the Tenth Circuit declared that Kansas had adopted the *Seely* rule. The court, however, modified the rule somewhat, stating that

> it is only when the nature of the defect, the type of the risk, and the manner of injury derive from the unreasonable dangerousness of the product that tort recovery can be pursued. This is consistent with the relative policies underlying the law of warranties and the law of torts.

*Id.* at 1582 (applying the rule of *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir.1981)). Other decisions by the federal courts construing Kansas law reflected this approach by holding that when the damage for which relief is sought results not from a sudden, calamitous occurrence but from the product's failure to live up to expectations, recovery in tort is not permitted. *Agristor Leasing v. Meuli*, 634 F.Supp. 1208, 1217 (D.Kan.1986); *Owens–Corning Fiberglas v. Sonic Development Corp.*, 546 F.Supp. 533, 542 (D.Kan.1982) (claim for damages for removing defective compressors and having them rebuilt does not properly sound in tort).

▮ In this case the manner of injury did not derive from the unreasonable dangerousness of the product, and there is no allegation of a sudden, calamitous occurrence causing damage. Rather, Defen-

Defendant to respond under these circumstances. Even if the Court were to entertain a Rule 56(f) motion at this late date, it cannot accept the reasons stated for the delayed response. Parkinson avers, as was suggested in the earlier motion denied on December 16, that Defendant has not conducted discovery because it expected a different summary judgment motion to be filed. However, Defendant plainly knew the contours of the motion actually filed by September 22, 1988. Four months have passed since that time. Even after Defendant did not respond to the motion in October (following an extension) and instead sought a delay in the proceedings and the Court afforded him a further opportunity to respond, which was also extended, Defendant apparently did not attempt to gain access to the facts through discovery. Moreover, the Parkinson affidavit does not set forth the materiality of the facts about which discovery is allegedly necessary to the issues raised by the summary judgment motion. The Court fails to see how the decisions reached on these motions would be any different if Defendant were permitted further discovery.

dant/Counterclaimant alleges that Plaintiff failed to design the aircraft properly and that it therefore had to be repaired in compliance with the FAA's AD 84–17–02; the damages Defendant seeks are the repair costs and revenues lost during repairs. Such damages, if proven, represent a loss of the benefit of the bargain and not an unexpected loss to person or property. *Agristor Leasing,* 634 F.Supp. at 1217. Therefore, under Kansas law no tort recovery is available,[2] and summary judgment is appropriate on Count I.

Count IV also sets forth a negligence theory of recovery; *i.e.,* that violation of the Federal Air Regulations constitutes negligence *per se.* Defendant argues that this claim merely adds another ground of negligence for recovery. Since the type of damage alleged by Defendant is not cognizable in negligence, he may not recover on this claim and summary judgment is appropriate.[3]

### Count III

In his Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and to Dismiss, Defendant "agrees that his Warranty Claim (Count III) is time barred." The Court therefore will treat Count III as voluntarily withdrawn by Defendant.

**2.** The Court is further persuaded that this is the correct result because the Supreme Court, in an admiralty case, adopted the *Seely* rule in principle, explaining that "damage to a product itself is most naturally understood as a warranty claim." *East River Steamship Corp. v. Transamerican Delaval, Inc.,* 476 U.S. 858, 872, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986). In *East River* plaintiff steamship company sought damages for repairing the propulsion system or turbines of ships which were damaged because of their faulty design and for income lost while the ships were out of service. In holding that there can be no tort recovery for economic loss, the Court rejected analyses for determining the tort/contract border which turn on the degree of risk or on the manner in which the product was injured. *Id.* at 870, 106 S.Ct. at 2301. These so-called intermediate positions were the ones adopted by the Kansas courts and discussed above. Although the Supreme Court's decision in *East River* is not controlling on issues of state law, the Court of Appeals for the Third Circuit predicted that Pennsylvania would disavow *Pennsylvania Glass Sand* and follow *East River.* *Aloe Coal Co. v. Clark Equipment*

### Count II

Count II of the Counterclaim sets forth a claim for fraud or misrepresentation alleging that Plaintiff made material representations to the FAA and others that the horizontal stabilizer trim system and related flight control systems and autopilot complied with 14 C.F.R. Part 25 and were adequately and safely designed. Defendant alleges that the representations were false and that Plaintiff knew that they were false or, in any event, made them recklessly. Defendant further alleges that Plaintiff knew that the FAA represented the flying public and intended that the FAA should rely on the representations and certify the aircraft as airworthy. Finally, Defendant alleges that the *FAA* acted in reliance on the representations of Plaintiff and that *Defendant's* aircraft was damaged.

The Kansas Court of Appeals has described the tort of fraudulent misrepresentation as

> an untrue statement of material fact, known to be untrue by the person making it, made with the intent to deceive or recklessly made with disregard for its truthfulness, where another party justifiably relies upon the statement, and acts

*Co.,* 816 F.2d 110 (3d Cir.1987). Since the basis for the Tenth Circuit's determination of Kansas law has now been rejected in favor of *East River,* it appears likely that when the Kansas courts next speak on the issue, they too will withdraw from the intermediate position and hold that there is no recovery available in tort for the purely economic losses suffered when a poorly designed product injures itself. Here the only injury, if need for modification can be so termed, is to the product itself, so there would plainly be no recovery available in tort.

**3.** The finding that recovery for negligence *per se* is not available in this situation is reinforced by the fact that invocation of that doctrine requires that the statute or regulation claimed to be violated must have as its purpose the protection of the particular interest which is invaded. *Security National Bank v. Chloride, Inc.,* 602 F.Supp. 294, 297 (D.Kan.1985). Defendant seeks recovery for damages to his economic interest. The pertinent Federal Air Regulations, however, protect the public's safety interest. See *infra* at 49, 49, 50.

to his injury. The injured party must have been deceived by, and have relied upon, the defendant's misrepresentations in order to recover.

*Slaymaker v. Westgate State Bank,* 241 Kan. 525, 739 P.2d 444 (1987).

Plainly, the person suffering damage and bringing the claim must be the same person induced to act in reliance on the representation. The concept is explained in Comment a to section 537 of the Restatement: "If the recipient does not in fact rely on the misrepresentation, the fact that he takes some action that would be consistent with his reliance on it and as a result suffers pecuniary loss, does not impose any liability on the maker." Restatement of the Law, Torts (Second) § 537, Comment a.

Defendant argues that in certain instances the tort of fraud can be made out under Kansas law without the plaintiff having received any direct misrepresentation from the defendant. Although the requirement of privity has been abrogated in some Kansas cases, the Court finds no indication in any of the cases cited by Defendant that the element of reliance has been abrogated. For example, in *Griffith v. Byers Construction Co.,* 212 Kan. 65, 510 P.2d 198 (1973), the court relied on the Restatement for its disavowal of the privity requirement, but stated:

The law is well settled that representations made to one person with intention that they will be repeated to another and acted upon by him *and which are repeated and acted upon to his injury* gives the person so acting the same right to relief as if the representations had been made to him directly.

(Emphasis added) (quoting *Massei v. Lettunich,* 248 Cal.App.2d 68, 73, 56 Cal.Rptr. 232 [1967]). The court in the same case cited the Restatement, Second, Torts § 531, which provides that one who makes a fraudulent misrepresentation is subject to liability for "pecuniary loss suffered by [those he intended or expected to rely on the misrepresentation] *through their reliance* in the type of transaction in which he intends or has reason to expect their conduct to be influenced." (Emphasis added.) In *Byers,* the plaintiffs were purchasers of house lots which had been sold by defendants with misrepresentations to building contractors who "were acting on behalf of their respective purchasers." The plaintiffs had never dealt with the defendant.

In *Citizens State Bank, Moundridge v. Gilmore,* 226 Kan. 662, 603 P.2d 605 (1979), defendant had sold cattle to one Gaede without disclosing to him that the cattle were diseased. The plaintiff was a bank that had extended credit to Gaede, with the cattle as security, upon a representation that the cattle were healthy. The court relied on the Restatement and *Byers* in overturning a grant of summary judgment for defendant. In the nondisclosure situation, the court was willing to infer reliance: "If such facts [the infection of the cattle] had been known by Gaede and disclosed to the Bank it is a fair assumption that the Bank would not have made the loan to Gaede in reliance upon a security interest in the cattle."

Defendant also cites *Tetuan v. A.H. Robins Co.,* 241 Kan. 441, 738 P.2d 1210 (1987), in which the plaintiff sued the defendant manufacturer for fraudulent misrepresentations made to her doctor concerning a Dalkon Shield which subsequently injured her. Defendant argued that plaintiff had not relied on any of its representations because "Plaintiff did not know the IUD she wore was a Dalkon Shield until after her injuries and after it had been removed." The court found the argument of no reliance incredible because there was testimony that the physician had been briefed by the manufacturer on the product and had relied on it for adequate testing of the device prior to marketing. There was also testimony from both the plaintiff and the doctor that they would not have used the Dalkon Shield if they had been informed of its true nature. The court held that "where a patient relies on a physician for treatment or advice as to an ethical or prescription device, justifiable reliance by the physician on misrepresentations or concealments by the manufacturer of that device constitutes justifiable reliance by the patient." *Tetuan,* 738 P.2d at 1228.

In all three of the cases cited, the Kansas courts found adequate reliance on the part of the plaintiff when the plaintiff justifiably relied on an intermediary who had relied on the defendant's misrepresentations or concealment and conveyed them to plaintiff either through words or actions. The plaintiffs in those cases did not deal with the defendant, and because of the structure of the relationships would not have been able or expected to deal with defendant other than through the intermediary. In the case before the Court, however, Plaintiff did deal directly with Defendant and accordingly had a basis for suing on representations made directly, expressly or impliedly, by Defendant and, in fact, did so with its warranty claim. This is not the type of case in which the plaintiff was forced structurally to rely on an intermediary and can be inferred to have relied because of the nature of the relationships between the intermediary and the defendant and the plaintiff and the intermediary.

Moreover, the representations or concealments in the cases cited could reasonably have been expected to cause the damages pleaded. In the case before the Court, the representations made to the FAA were totally independent of the damages alleged by Defendant. The FAA regulations under which Defendant claims misrepresentations were made are intended to promote safety of flight by prescribing minimal standards for aircraft as may be required in the interest of safety. *See* 49 U.S.C. § 1421. They are not intended to protect buyers of aircraft from economic loss caused by faulty design. *Rauch v. United Instruments, Inc.*, 548 F.2d 452, 459 (3d Cir.1976). Although there is an allegation that the FAA represents the interests of the flying public and persons who would use or own its aircraft, the statute makes plain that it represents these groups as far as their physical safety is concerned. There appears no reason that the Court should find liability in fraud for representations made to the FAA when those representations in no way related to the transaction between Plaintiff and Defendant and in no way, as seen in the allegations of the Complaint, was relayed to or relied on by Defendant.

A similar situation was addressed in *Flugleider v. American Airlines, Inc.*, Av. Cas. (CCH) ¶ 17,297 (D.D.C.1983). In that case plaintiff sought recovery in fraud for alleged misrepresentations of defendants to the FAA regarding the cause of a crash which resulted in the FAA's grounding of planes of the type owned by plaintiff. The court stated that "Even if plaintiff were determined to be within the protected class, its inability to articulate any action taken reasonably in reliance on the alleged misrepresentation of defendants to the FAA, defeats both its fraud claim and its negligence claim." *Id.* at ¶ 17,2908. The court reached a conclusion that applies here as well: "In sum, only the FAA, and not the plaintiff, took any action based upon the information supplied by defendants and plaintiff had no choice but to comply with the FAA's grounding order." *Id.* Similarly here, the loss to Defendant was caused by having to comply with the FAA's air directive.

It appears from the recent case of *Carter v. Commercial Realty, Inc.*, — Kan. ——, 761 P.2d 334 (App.1988), that the elements of fraud and negligent misrepresentation in Kansas are substantially similar, with both requiring reliance to be proved. Therefore, Defendant's claim for negligent misrepresentation must also fail for failure to allege or to be able legally to demonstrate reliance. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case and on which that party will bear the burden of proof at trial.")

Defendant relies on section 522 of the Restatement as the basis of his claim of negligent misrepresentation, but even if this section had been specifically adopted in Kansas, Defendant's argument would be unavailing. Section 552 provides:

§ 552. Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Under section 552 there remains a requirement of loss caused by justifiable reliance upon the information provided by defendant, and no such reliance has been alleged. Moreover, there is no allegation that the allegedly false information provided for the type certificate was intended to guide purchasers and influence the purchase, thereby protecting them from economic loss. In fact, the purpose of the certification of aircraft is to reduce accidents and the people protected are those whose safety might be affected. *Arney v. United States*, 479 F.2d 653, 658 (9th Cir. 1973). *Arney* also makes plain that to the extent subsection 3 might be relied on by Defendant, it does not apply. The Court finds therefore that summary judgment is appropriate on Count II.

Plaintiff has moved for summary judgment on its claim and has set forth facts showing that the sum sought is due and owing. Defendant admits that he incurred the charges for modification of the aircraft. His sole argument against the grant of summary judgment for Plaintiff is that fraud has been asserted as a defense and that more discovery is necessary to establish fraud. The Court has ruled, however, that a claim for fraud, whether in the posture of a counterclaim or a defense, cannot be made out here. The Court will, therefore, grant Plaintiff's motion for summary judgment.

Accordingly, it is hereby *ORDERED* that Plaintiff's motion for summary judgment on its claim be, and it is hereby, *GRANTED* in the amount of thirty-nine thousand two hundred fifty-three dollars and twenty-seven cents ($39,253.27) plus interest and costs as allowed by law.

It is *FURTHER ORDERED* that Plaintiff's motion to dismiss or for summary judgment on Counts I, II and IV of the counterclaim is hereby *GRANTED*. Judgment to enter.

Count III is voluntarily dismissed in accordance with the representation of Defendant that it is time barred.

