**LEARJET CORPORATION,**
**Plaintiff, Appellee,**

v.

**Robert SPENLINHAUER,**
**Defendant, Appellant.**

**No. 89–1269.**

United States Court of Appeals,
First Circuit.

April 25, 1990.

John M.R. Paterson with whom Durward W. Parkinson, Patricia A. Peard and Bernstein, Shur, Sawyer and Nelson were on brief, for defendant, appellant.

Jeffrey T. Edwards with whom John J. Flaherty, Preti, Flaherty, Beliveau & Pachios, Hugh C. Griffin, David J. Adams, Michael A. Meyer and Lord, Bissell & Brook were on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

Robert Spenlinhauer appeals from a judgment of the United States District Court for the District of Maine granting summary judgment for Learjet Corporation on Spenlinhauer's claims for fraudulent and/or negligent misrepresentation. Because we conclude that Spenlinhauer's allegations state a claim for fraudulent misrepresentation under the applicable law, we vacate the district court's judgment as to that claim and remand for trial. However, we affirm the district court's judgment dismissing the negligent misrepresentation claim.

## Background

In 1976, in response to an application from Learjet, the Federal Aviation Administration ("FAA") issued a type certificate for the Learjet Model 24F aircraft, certifying it as airworthy. In 1977, Spenlinhauer purchased a Model 24F jet from Learjet for approximately $1.37 million. In 1981, the FAA issued Airworthiness Directive 81–16–08, reducing the permissible ceiling of the Model 24F aircraft from 51,000 to 45,000 feet. The directive was revised in 1983 to permit use at altitudes up to 51,000 feet provided that certain modifications were made to the aircraft. Under the 1983 revision, the modifications were optional. However, in 1984, the FAA issued Airwor-

thiness Directive 84–17–02, which made the modifications mandatory for all Model 24F aircraft.

In July, 1986, Spenlinhauer brought his Model 24F aircraft to Learjet's service center in Wichita, Kansas to have the modifications made so as to comply with Directive 84–17–02. Learjet charged Spenlinhauer $39,253 for the work on the jet, but Spenlinhauer refused to pay.

In 1988, Learjet brought an action against Spenlinhauer in the United States District Court for the District of Maine. Asserting diversity jurisdiction under 28 U.S.C. § 1332, Learjet sought to recover the $39,253 charged for the work performed on Spenlinhauer's aircraft, as well as $5,676 in accrued interest. Spenlinhauer filed an answer denying financial responsibility for the modification costs and asserting various affirmative defenses. Spenlinhauer also filed a counterclaim, alleging negligence, breach of warranty, fraudulent and negligent misrepresentation, and violation of FAA regulations. In his counterclaim, Spenlinhauer asserted that Learjet's wrongful conduct had rendered the aircraft inoperable unless modified as required by FAA directive 84–17–02. He sought a judgment against Learjet for the cost of complying with the directive.

The district court entered summary judgment for Learjet on its claim and on all Spenlinhauer's counterclaims. 707 F.Supp. 44 (D.Me.1989). Spenlinhauer now appeals only with respect to the grant of summary judgment on the misrepresentation claims.

Spenlinhauer's misrepresentation claims rest on the theory that he purchased the Model 24F aircraft in reliance on the FAA certification and that, in originally certifying the Model 24F, the FAA had relied on misrepresentations made to it fraudulently or negligently by Learjet. It follows, Spenlinhauer contends, that he purchased the aircraft relying indirectly on Learjet's misrepresentations to the FAA. Spenlinhauer further contends that the FAA directive requiring modification of the jet and, hence the cost of compliance, were the result of these earlier misrepresentations. Thus,

Spenlinhauer seeks to hold Learjet liable for damages (the cost of modifying the jet to comply with Directive 84–17–02) caused by Learjet's misrepresentations.

Applying Kansas law,[1] the district court ruled that as a matter of law, Spenlinhauer could not recover on a theory of either negligent or fraudulent misrepresentation, because despite his allegations that the FAA relied on Learjet's alleged misrepresentations, Spenlinhauer himself had not relied on any misrepresentations. 707 F.Supp. at 47–49.

On appeal, Spenlinhauer argues that the district court erred in holding that he had not demonstrated reliance on the alleged misrepresentations. Relying on several Kansas Supreme Court cases, Spenlinhauer contends that a claimant may recover for misrepresentation even where it relies only indirectly—i.e., through the statements or acts of a third person—on the false statements of the defendant, and even if the specific statements made by the defendant were never actually relayed to the plaintiff, as long as the claimant was within the class of persons that the defendant had reason to expect would be influenced by the misrepresentations.

## Discussion

We turn first to whether Spenlinhauer's counterclaim adequately presents the theory on which he now seeks recovery. Learjet argues that Spenlinhauer failed sufficiently to allege reliance, because the counterclaim states only that the *FAA*, not Spenlinhauer, relied on the misstatements.

 Although Spenlinhauer's theory is perhaps not pleaded with utter specificity, the counterclaim makes out the proposition that Spenlinhauer relied indirectly on Learjet's alleged misrepresentations to the FAA, by purchasing the Model 24F aircraft in reliance on the FAA's certification. The

counterclaim states that the FAA acted in reliance on the misrepresentations of Learjet in certifying the aircraft as airworthy. It also alleges that Learjet "knew that the FAA represented the interests of the flying public and persons who would use or own its aircraft, including [Spenlinhauer]" and that Learjet "intended that the FAA should rely and act on its representations and should certify the aircraft as airworthy and place the aircraft within the stream of commerce." These allegations indicate that Spenlinhauer had purchased the aircraft in reliance on FAA certification. If the aircraft would not have been put into commerce without the FAA certificate of airworthiness, it follows that a purchaser necessarily relied on the certificate, since a sale could not have occurred but for the FAA certificate.

The counterclaim further states that "the aircraft was damaged and [Spenlinhauer] suffered damages," "as a result of the fraud and/or misrepresentations of [Learjet]." The assertion that the misrepresentations damaged the aircraft also implies reliance. *Cf. Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 738 P.2d 1210, 1230 (1987) (in upholding the jury instruction on a misrepresentation claim, the court stated "the magic word 'reliance' was not used, but the effect was the same: the jury was required to find that Robins' misrepresentations *caused* Dr. Pfuetze to use the Dalkon Shield which, in turn, *caused* [the plaintiff's] injuries. The jury was thus required to find reliance.") (emphasis in original).

 As we conclude that Spenlinhauer sufficiently alleged that in purchasing the Model 24F, he indirectly relied on the alleged misrepresentations of Learjet, we turn to the next question: does Kansas law recognize such a claim? The Kansas courts have held that a plaintiff may recover for fraudulent misrepresentation where

---

1. The district court was required to apply Maine choice of law rules. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (In diversity cases, federal courts must apply the choice of law provisions of the state in which they sit). The court concluded that under Maine conflict of law principles, Kansas law governed the dis-

pute, because Kansas, Learjet's principal place of business and where the modifications to Spenlinhauer's aircraft were made, was the state with the most significant relationship to the events surrounding the issues raised by Spenlinhauer's claims. 707 F.Supp. at 45. Neither party has contested the district court's determination.

he relies only indirectly (through the statements or acts of a third person) on the misrepresentations of the defendant; and this is so even where defendant's actual words were never conveyed to the plaintiff. *See, e.g., Tetuan v. A.H. Robins Co.,* 241 Kan. 441, 738 P.2d 1210 (1987) (discussed below); *Citizens State Bank, Moundridge v. Gilmore,* 226 Kan. 662, 603 P.2d 605 (1979) (where sellers of cattle fraudulently concealed information from buyer, knowing that the buyer was seeking financing from the bank, bank could recover from sellers for fraudulent misrepresentation, although no statements were made by sellers to the bank); *Griffith v. Byers Construction Co. of Kansas, Inc.,* 212 Kan. 65, 510 P.2d 198 (1973) (where developer fraudulently concealed soil defect in selling property to building contractors, ultimate purchasers could recover from developer for fraudulent misrepresentation, although the purchasers never dealt with the developer).

In these cases, the Kansas Supreme Court has given authoritative weight to the Restatement (Second), which provides:

One who makes a fraudulent misrepresentation is subject to liability to the person or class of persons whom he intends or has reason to expect to act or refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.

The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

Restatement (Second) of Torts §§ 531, 533 (quoted in *Gilmore,* 603 P.2d at 611). The Kansas Supreme Court has ruled that, "[o]ne who makes a fraudulent misrepresentation or concealment is subject to liability for pecuniary loss to the persons or class of persons whom he intends or has reason to expect to act or refrain from action in reliance upon the misrepresentation or concealment." This is so even if the plaintiff did not receive "any direct misrepresentations from the defrauding party." *Gilmore,* 603 P.2d at 611, 610. *See also Griffith,* 510 P.2d at 204.

It is true that the content of the misrepresentations allegedly made by Learjet to the FAA were never relayed by the FAA to Spenlinhauer. However, the Kansas Supreme Court has not interpreted the tort of fraudulent misrepresentation as necessarily requiring conveyance to plaintiff of the terms of the actual misrepresentation. In *Tetuan v. Robins Co.,* 241 Kan. 441, 738 P.2d 1210 (1987), the Kansas Supreme Court held that "where a patient relies on a physician for treatment or advice as to an ethical or prescription device, justifiable reliance by the physician on misrepresentations or concealment by the manufacturer of that device constitutes justifiable reliance by the patient." *Id.* 738 P.2d at 1228. Failure to communicate to the patient the terms of any misrepresentations made by the manufacturer to the doctor did not prevent the patient from recovering against the manufacturer.

■ We recognize that the relationship of an aircraft purchaser to the FAA is not altogether similar to that of a patient to her doctor. Nonetheless, the Kansas court's reasoning and approach seems applicable here. We conclude that Spenlinhauer has sufficiently alleged a cause of action for fraudulent misrepresentation under Kansas law. If, as Spenlinhauer alleges, the FAA relied on Learjet's fraudulent misrepresentations when it certified the Model 24F, and Spenlinhauer purchased the Model 24F in reliance on the FAA's certification, then he has indirectly relied on Learjet's fraudulent misrepresentations. *Cf. Handy v. Beck,* 282 Or. 653, 581 P.2d 68 (1978) (where well driller filed report containing fraudulent misrepresentations with state engineer to comply with state regulations, subsequent purchasers of property containing the nonconforming well were entitled to "rely upon the apparent lawful-

ness" of the well and could therefore recover from the driller damages resulting from the well's noncompliance; "their right to recover was not dependent on a misrepresentation being conveyed to them").

Learjet argues that the cited Kansas cases only permit a claimant to recover for misrepresentations made to a third person if the claimant lacked an opportunity to deal directly with the maker of the misrepresentations—being forced to rely on the third party as an intermediary. Since Spenlinhauer dealt directly with Learjet, Learjet argues, Spenlinhauer was not entitled to rely on the FAA as an intermediary.

This argument, however, fails to distinguish Spenlinhauer's claim from the Kansas cases discussed above. There is no language in the Restatement or the Kansas case law suggesting that a party may rely on an intermediary only where it did not deal directly with the maker of the fraudulent misrepresentations. Instead, the cases and the Restatement indicate that the controlling issue is whether the plaintiff is within the class of persons whom the maker of the fraudulent misrepresentation "intended or had reason to expect to act or refrain from action in reliance upon the misrepresentation." *Gilmore*, 603 P.2d at 611. Here, Spenlinhauer alleges, in substance, that, as "a member of the flying public and [a] person who would use or own [Learjet's] aircraft," he was within the class of persons whom Learjet would have reason to expect would rely on the outcome of its alleged fraudulent misrepresentations to the FAA.

Learjet also argues that Spenlinhauer's reliance on the FAA is misplaced, because the FAA did not directly participate in Spenlinhauer's purchase of the aircraft and was not intended by the parties to act as a conduit or intermediary. The FAA's role is said to be the protection of the safety of the flying public, rather than of purchasers against financial loss.

■ But the Kansas cases do not limit liability for fraudulent misrepresentations to situations in which the party making the fraudulent misrepresentation *intended* that the misrepresentation be communicated to the plaintiff. Rather, they extend liability to situations in which the plaintiff was within the class of persons whom the maker of the fraudulent statement "ha[d] *reason to expect* to act or refrain from action in reliance upon the misrepresentation." *Gilmore*, 603 P.2d at 611 (emphasis added). *See also Countryside Casualty Co. v. Orr*, 523 F.2d 870, 873 (8th Cir.1975) ("The generally accepted rule is that the maker of a fraudulent misrepresentation is liable to those he intends to influence and to those he has reason to expect to act in reliance upon the misrepresentation."). As a purchaser of the Model 24F, Spenlinhauer was within the class of persons whom Learjet would have reason to expect to act in reliance on any misrepresentations made to the FAA to obtain certification for the Model 24F. This is so quite apart from whether or not Spenlinhauer or Learjet actually intended the FAA to act as an intermediary.

Aside from being premised on the erroneous assumption that the fraudulent statement must be communicated by an intended intermediary, Learjet's contention that Spenlinhauer cannot rely on the FAA, because the FAA's role is to ensure the safety of aircraft, rather than protect against economic loss, makes little practical sense. If a purchaser of the aircraft were injured because of a defect the manufacturer had concealed from the FAA in order to obtain certification, the purchaser would presumably be entitled to recover for his injuries if he could show that the concealment caused the FAA to certify, and that the purchaser relied on the certification in deciding to buy the aircraft. Since the Restatement allows recovery for pecuniary loss, there is no reason a purchaser should not be allowed to recover where the damages are the result of changes required to render the aircraft safe, rather than the result of physical injury due to the aircraft's unsafe condition.

Although the district court's rejection of Spenlinhauer's fraudulent misrepresentation claim rested primarily on its assumption that Spenlinhauer could not establish reliance, the court also seemed to perceive

a separate causation deficiency in the claim. The court stated that "the representations made to the FAA were totally independent of the damages alleged by [Spenlinhauer]" and that "the loss to [Spenlinhauer] was caused by having to comply with the FAA's air directive." 707 F.Supp. at 49. However, while the FAA directive was the immediate cause of Spenlinhauer's damages, Spenlinhauer has raised a factual issue as to whether the FAA directive, and hence the resulting cost of compliance, were caused by Learjet's alleged fraudulent misrepresentations. He alleges that the directive was prompted by the FAA's finding that the original certification was premised on Learjet's false representations. Taking Spenlinhauer's allegations as true, the FAA directive would not have been issued had Learjet's representation of the Model 24F in the original application for certification been accurate.

■ If Spenlinhauer can establish his allegations at trial, he will be entitled to recover any costs of complying with the FAA directive that would have been avoided had Learjet's misrepresentations been accurate. *See Fox v. Wilson*, 211 Kan. 563, 507 P.2d 252, 267 (1973) ("[I]n a damage action by a purchaser for fraud in inducing the purchase, the measure of damages is the difference between the actual value of the property at the time of the sale and the value it would have had if the representations had been true.... 'A defrauded vendee is entitled to compensation for the contract he thought he was making and any advantage he would have obtained thereunder.' "). *See also Sippy v. Cristich*, 4 Kan.App.2d 511, 609 P.2d 204, 210–11 (1980) (cost of necessary repairs may be used to establish the difference between the value as represented and the actual value).

■ While we conclude that Spenlinhauer has stated a claim for *fraudulent* misrepresentation under Kansas law, he has not stated a claim for *negligent* misrepresentation. The Restatement (Second) sections relied on by the Kansas Supreme Court, sections 531 and 533, both refer only to "fraudulent misrepresentations." Al-

though Kansas may permit recovery for negligent misrepresentation in conventional circumstances, *see, e.g., E.F. Hutton & Co. Inc. v. Heim*, 236 Kan. 603, 694 P.2d 445 (1985), we are unaware of any Kansas precedent indicating that the broad view of fraudulent misrepresentation embodied in Restatement (Second) sections 531 and 533 applies to actions for negligent misrepresentation. Courts generally restrict negligent misrepresentation claims to a narrower class of plaintiffs than fraudulent misrepresentation claims. *See, e.g., Haberman v. Washington Public Power Supply System*, 109 Wash.2d 107, 744 P.2d 1032, 1070 (1987) ("[R]equiring privity, a fiduciary relationship, or a limited class is warranted in negligent misrepresentation cases where a defendant is merely negligent and should not be held potentially liable to an unlimited number of plaintiffs.... [However, in] a fraud case ... a duty may also arise to those third persons whom the defendant intends or has reason to expect will receive the information...."). Accordingly, while we are persuaded that the Kansas cases discussed above support Spenlinhauer's claim for fraudulent misrepresentation, we do not find that they allow recovery for indirect reliance on negligent misrepresentations.

We hold only that viewing the facts in the light most favorable to Spenlinhauer, he has stated a cause of action for fraudulent misrepresentation under Kansas law. To ultimately prevail, Spenlinhauer must demonstrate at trial that Learjet made fraudulent misstatement(s) or concealment(s) to the FAA; that the FAA relied on these in certifying the Model 24F aircraft; that Spenlinhauer couldn't or wouldn't have purchased the aircraft absent FAA certification; and that the repairs mandated by Airworthiness Directive 84–17–02 would not have been required had the Model 24F been as Learjet represented it to be to the FAA.

For the forgoing reasons, we affirm the district court's judgment dismissing Spenlinhauer's negligent misrepresentation claim, but vacate its judgment in respect to Spenlinhauer's fraudulent misrepresenta-

tion claim. We remand the latter for further proceedings consistent herewith.

*So ordered. Each party to bear its own costs.*